## BARSTOW vs. GRAY.

Where a party who had contracted to furnish a quantity of goods, afterwards admitted another to aid him in supplying the requisite quantity, for which he was to receive the same price, and was paid accordingly ;—it was held that the person thus subsequently admitted was a competent witness for the party with whom he had contracted, in a suit brought by the latter to recover the price of the goods sold.

A dormant partner, or subcontractor, subsequently admitted to participate in the benefit of a contract, without the privity of the party sought to be charged, need not be joined as plaintiff in an action brought to recover payment for the goods delivered or labor done.

If a contract in writing be signed by the party sought to be charged, it is sufficient to take the case out of the statute of frauds, though it be not signed by the party seeking the remedy.

In this action, which was *assumpsit,* brought to recover damages for the breach of a contract respecting the sale and delivery of a quantity of wheat, by the plaintiff, who resided in *Hallowell,* to the defendant, at the city mills in *Boston,* the evidence of the contract was contained in certain letters which passed between the parties.

It appeared that after some previous intercourse between them, the tenor of which was not in evidence, the plaintiff wrote to the defendant, *May 2, 1822,* in these terms :—

" Sir, I have sent you a sample, being six bushels, of wheat, " from three lots, and I suppose it may be a fair average ;—shall " think there is very little inferior or superior to the extremes. " In order to be able to buy the wheat, should you want, I have " been under the necessity of sending it to Messrs. *Rice & Thax-* " *ter,* instead of doing it directly to yourself, who will apprise you " when it arrives. Should you conclude to purchase, the sooner " it is done, the better. I think from 3000 to 8000 bushels " might be had, at said price, if no opening appears before I hear " from you."

To this the defendant, on the 24th of *May,* replied thus ;—" I " have received your letter of *May* 2d, with three sacks of " wheat, which proves good ; weight 59, 60, 61 lbs. per bushel. " I should have answered your letter sooner, but did not get a

" report of the quality till yesterday. The wheat will be worth " one hundred and thirty cents per bushel, delivered at the mills " called the city-mills in this town."

The plaintiff answered this letter on the 31st of *May* as follows ;—" Yours relative to the wheat not coming to hand so soon " as was expected, I had written to *Alexandria* before I received " it, and expect an answer very soon. Should the offer be a bet- " ter one than yours, I should like at the same price to give you " the preference, and will advise you ;—otherwise shall ship it " to you with all possible despatch. *Postscript.* Contracts for " about 5000 bushels wheat have been made this week ; it may " not come in."

The plaintiff, at the trial before *Weston* J. called one *Ebenezer White* as a witness ; to whose competency an objection being made on the ground of interest, he stated, upon the *voir dire*, that in the spring of 1822, after the plaintiff had purchased at *Hallowell* a considerable quantity of wheat, with a view to send it to the defendant at *Boston*, the plaintiff proposed to the witness that he should furnish wheat at *Hallowell*, to be sent to the defendant, saying that he had made a contract for that purpose at 130 cents the bushel ;—that accordingly the witness furnished part of a parcel of 2700 bushels, for which he was to receive of the plaintiff the same price the plaintiff might obtain of the defendant ;— that this parcel, and 800 bushels more, in which the witness had no interest, were delivered at the city mills in *Boston* and paid for by the defendant, in *July* 1822, at the price of 130 cents per bushel; out of which the plaintiff paid the witness for his part of the 2700 bushels ;—that the wheat now in controversy was purchased by the plaintiff prior to that time ; and that the witness was not a party to the contract with the defendant, and had no interest in the suit. Being thereupon admitted to testify in chief, he stated that about the time of the arrival of the 3500 bushels in *Boston*, in *July* 1822, he informed the defendant that the plaintiff had been purchasing wheat for him, and wished to know if he was ready to receive it. To his inquiry respecting the quantity of wheat purchased for him by the plaintiff, the witness answered that he had bought between four and five thousand bushels, and expected the defendant to receive it at the price before stated.

Barstow *v.* Gray.

The defendant replied that he was sorry, but said he would, or supposed he must take it, though his mills were very full.   The witness then informed the defendant that one shipment from the plaintiff had arrived, and that another vessel was then on the passage to *Boston* ; but he did not intimate to the defendant, nor did the witness know, that these two shipments did not contain the whole quantity contracted for.

It further appeared that on the arrival at *Boston* of the vessel which carried the wheat now in controversy, about the 4th of *August* 1822, the master informed the defendant, and his agent at the mills, that he had brought from the plaintiff the residue of the wheat, which was on board his vessel ; and that he would bring it to the mills ; but the defendant told him it was of no use, and that he should not receive it.   The master then landed and stored the wheat at another place in the city, where he again offered it to the defendant, who still refused to receive it.   The wheat being then sold for the most it would bring, the plaintiff brought this action to recover the difference between the price sold for, and the price agreed.

The counsel for the defendant objected that the wheat ought to have been tendered at the city mills ; and that *White*, the witness, should have been joined with the plaintiff in the action. But these objections the Judge overruled ; and the jury returned a verdict for the plaintiff, which was taken subject to the opinion of the Court upon the admissibility of the witness, and upon the points raised at the trial.

*Allen*, for the defendant, contended that the letters did not furnish any evidence of a contract, and were nothing more than the ordinary correspondence of two merchants, concerning the state of the market, and the prospect of profit upon a shipment of the article in question.   The plaintiff himself did not consider the defendant bound to receive the wheat at all events, nor hold himself obliged to ship it to *Boston*, as is evident from his last letter, in which he intimates his intention not to send it to that place, if he could do better at *Alexandria*.   It is true he chooses in that letter to speak of the defendant's " offer;" but this does not fix the character of the communication ; and if it had been an offer

to purchase, the plaintiff was not at liberty to speculate upon it till he could receive advices from distant ports. To bind the defendant, it should have been instantly accepted.

But if the evidence of the contract is contained in the letters, then the admission of parol testimony to explain it was irregular, there being no latent ambiguity.

And if parol evidence could be received, yet *White* was incompetent to give it, because of his interest in the suit. He was to receive such price as the plaintiff should receive of the defendant; which it was plainly his interest to increase. But if his testimony was rightly admitted, it disproves the declaration, and destroys the plaintiff's right to recover, by shewing a partner not joined in the suit. *It is the case of two joint owners of a chattel sold, and to be paid for in two installments ; where, though one owner receives the first payment in full for his share, and, even releases to the other, yet both must join in an action for the residue, because both were interested in the subject of the contract.*

Neither was the contract fulfilled on the part of the plaintiff. He was bound to deliver the wheat at the city mills ; which the defendant did not disable nor prevent him from doing. The dissuasive language used by the defendant to the master of the vessel, could operate no farther than to exonerate the plaintiff from any action at the suit of the defendant for not delivering the wheat ; but could not vest in him a right of action for the price; to entitle himself to which, he should first do all he had stipulated previously to perform. *Morton v. Lamb* 7 *D. & E.* 123. 5 *Com. Dig.* 262. 2 *Com. Dig.* 452. *Doug.* 684. *Phillips v. Fielding* 2 *H. Bl.* 123.

And the contract was void for want of mutuality, there being no engagement on the part of the plaintiff to deliver any quantity of wheat, which the defendant could enforce at law. He was perfectly at liberty to sell it at the best bargain he could make, having only intimated his intention to send it to the defendant if he could do no better.

*Sprague*, for the plaintiff. The letters contain in themselves sufficient evidence of an agreement between the parties. If there is any ambiguity, it is of the defendant's own creation; and

Barstow v. Gray.

the rule is that the party using language of doubtful meaning is bound by the interpretation which he knows the other party has given it. Here the defendant knew the plaintiff's interpretation of the contract, to which he made no objection or reply. The amount of his undertaking was, that if the plaintiff would send the goods, he would receive them at the agreed price ; and the plaintiff did send them. He might have retracted his offer before any act done by the plaintiff in execution of the contract ; as a bid at auction may be retracted before the hammer is struck down ; but not afterwards. *Mason v. Pritchard* 12 *East* 227. *Sturgis v. Robbins* 7 *Mass*. 301. *Egerton v. Matthews* 6 *East* 307. *Adams v. Lindsall* 1 *Barnw. & Ald.* 681.

If the contract were not in writing, still it would not be void by the statute of frauds, because it was a contract of labor and service to be performed by the plaintiff, in the purchase and transportation of goods, and not for the sale of a specific parcel then in his hands. *Towers v. Osborne* 1 *Str.* 506. 4 *Burr.* 2101. Here was also a part performance of the contract by the delivery and acceptance of the first shipment. *Damon v. Osborn* 1 *Pick*. 480. *Ricker v. Kelley* 1 *Greenl*. 117.

It is true as a general rule, that performance of the whole contract must precede the right to compensation. But the exception to this rule is where performance is prevented or excused by the party entitled to it ; and the case at bar is within the exception. *3 D. & E.* 683. *Jones v. Barkley Doug*. 688.

It was not to vary or explain a written contract, but to shew its performance, that the testimony of *White* was admitted. And he was not a party to any stipulation with the defendant, but only to a sub-contract with the plaintiff.

WESTON J. delivered the opinion of the Court at the succeeding *August* term in *Oxford*, as follows.

There is no small obscurity in the written correspondence adduced as evidence of a contract on the part of the defendant, for the breach of which damages are sought to be recovered in this action. But we are of opinion that, upon a fair analysis, it does import a contract, and that each of the parties must have been apprized that the other so understood it.

The first letter of the plaintiff to the defendant, under date of the second of *May* 1822, advises that from three to eight thousand bushels of wheat might be had at *Hallowell*, of an average quality with a sample forwarded to *Rice* and *Thaxter*, as the letter states, " in order to be able to buy the wheat, should you want." And the letter further states, " should you conclude to purchase, the sooner it is done the better." This letter contains a proposition' to sell to the defendant, or to purchase for his use at *Hallowell*, from three to eight thousand bushels of wheat, corresponding with the sample. The defendant replies on the twenty fourth of the same month of *May*, apologises for the delay, approves of the sample, and subjoins, " the wheat will be worth one hundred and thirty cents per bushel, delivered at the mills, called the city mills in this town." These mills belonged to the defendant. This letter appears to us to be tantamount to saying, on his part, " I have " attended to your proposition, have examined the wheat, approve " of it, and will pay you therefor one dollar and thirty cents per " bushel, delivered at my mills in *Boston*"; and by the wheat, must be understood that which the plaintiff had proposed to sell to him or to purchase for him, namely, from three to eight thousand bushels, equal in quality to the sample. The plaintiff, by his letter to the defendant, dated the thirty first of the same month, states that in consequence of the delay on the part of the defendant, he had written to *Alexandria* for a market, from which he expected an answer very soon; and adds, " should the offer be a " better one than yours, I should like, at the same price, to give " you the preference, and will advise you; otherwise shall ship " it to you with all possible despatch"; and in a postscript, he advises the defendant that contracts for about five thousand bushels of wheat had been made. The plaintiff thus apprizes the defendant that he considers his letter an offer for the wheat, and that unless he very soon receives a better one from *Alexandria*, of which he will advise him, he will accept his offer, and forward the wheat as soon as possible. If the defendant was misunderstood by the plaintiff in considering his letter an offer, it was very easy for him to have disclaimed such intention; and if he had done so, before the plaintiff had actually accepted, either in express terms, or by some act done, the defendant could not have

been charged. Instead of which, although he had reason to believe from the plaintiff's last letter that, unless he was otherwise advised within a reasonable time, the wheat would be sent by the plaintiff, in expectation of obtaining therefor the price stated in his letter, he remains silent, and actually receives the greater part of the wheat forwarded.

It has been insisted in argument, that both of the parties must be bound or neither. In order to take a case out of the statute, a note or memorandum in writing must be made and signed by the party to be charged. In *Egerton v. Matthews & al.* where the defendants agreed in writing to buy of the plaintiff, thirty bales of *Smyrna* cotton, and they signed, but the plaintiff did not, it was decided that the defendants were bound; they being the parties sought to be charged. The same doctrine is held in *Allen v. Bennet* 3 *Taun.* 169; and it is there considered that the party who does sign is liable, although he has no legal means of enforcing the contract against the other. *Mansfield* C. J. in the same case says, " every one knows it is the daily practice of the court of " chancery to establish contracts signed by one person only, and " yet a court of equity can no more dispense with the statute of " frauds than a court of law can."

But it is by no means certain that the plaintiff was not equally bound; and that the contract might not have been legally enforced against him. By his letter of the thirty-first of *May*, he virtually accepts the defendant's offer, unless he otherwise advises him soon; and if, after a reasonable time had elapsed, having had no better offer from *Alexandria*, and giving no notice to that effect to the defendant, wheat had in the mean time risen in value, and he had not forwarded it to the defendant, it is far from being clear that he might not have been held answerable to him in damages for his failure so to do. However this may be, we are of opinion that the defendant's letter, connected with the first letter of the plaintiff, was an offer to purchase upon certain terms; and that the second letter of the plaintiff, and the act of forwarding the wheat, was an acceptance of that offer by him; by which the contract became operative and binding on the part of the defendant, the acceptance of the plaintiff forming a sufficient consideration therefor; more especially as it appears that the defendant

was advised of the manner in which his letter was understood by the plaintiff, and by his silence, as well as by his receipt of the greater part of the wheat, acquiesced in that construction. ,

White, the witness, who is objected to as incompetent in consequence of interest, being at the request of the defendant's counsel examined upon that point, disclaims all interest in the event of this suit. He admits that he was permitted by the plaintiff to participate, to a limited extent, in the benefit of the contract; but states that that portion of the wheat, in which he was concerned, having been received by the defendant, according to his engagement, and he having been fully paid and satisfied, he has no interest whatever in the controversy between these parties. The objection to his competency therefore, upon the ground of interest, is not supported.

But it is urged that, from the facts disclosed by his testimony, *White* ought to have joined in bringing the action; and that the plaintiff, instead of being entitled to a verdict, ought to have been non-suited. There was no privity whatever between *White* and the defendant. The plaintiff, when he made the contract, had no connection with *White*. The bargain, afterwards made between them, merely fixed the terms upon which the latter would furnish a part of the wheat, which the plaintiff was to procure for the defendant.

In *Mawman v. Gillet*, reported in a note, 2 *Taunt.* 326, the plaintiff had employed the defendant to print certain works for him, which was the consideration for the assumpsit set forth in the declaration. The plaintiff was the only person known to the defendant in the contract, but others had been permitted by the plaintiff to share in the benefit of it, among whom was one *Evans* offered by the plaintiff as a witness, and an objection, made to his admissibility as such, was overruled by the Court.

In *Lloyd v. Archbowle* 2 *Taunt.* 324, a dormant partner, who participated with the plaintiff in the benefit of the contract, was not joined in the action, which it was insisted he should have been. But the Court decided otherwise; and *Mansfield* C. J. who delivered the opinion of the Court, says " there is a material distinc- " tion between the case, where partners are defendants, and " where partners are plaintiffs; if you can find out a dormant

Barstow *v.* Gray.

" partner defendant you may make him pay, because he has had " the benefit of your work; but a person with whom you have no " privity of communication in your contract shall not sue you."

To entitle the plaintiff to maintain this action, it was necessary for him to aver and to prove that he delivered or offered to deliver the wheat, at the city mills, unless such delivery or offer to deliver was prevented or waived on the part of the defendant. The wheat arrived on ship board in the harbor of *Boston*; the master of the vessel had orders to deliver it at the city mills; this he was ready and desirous to do, and called on the defendant at the mills, offering to deliver it, and requesting him to receive it. This the defendant refused; declaring to the master that it was of no use for him to bring it any nearer to the mills. As much as to say, it is entirely unnecessary for you to pass through the several bridges, and to bring your vessel round, in order to go through the useless ceremony of tendering the wheat at the mills; for I shall not receive it. Had the defendant been passive, doing no act and making no declaration, excusing or waiving the delivery at the mills, the wheat must have been tendered there to entitle the plaintiff to recover. But this condition being expressly waived, the plaintiff has all the rights which would have accrued to him, if he had actually delivered or tendered the wheat at the mills. *Jones v. Barkley 2 Doug.* 684. *Rawson v. Johnson 1 East* 203. *Waterhouse v. Skinner 2 Bos. & Pul.* 447. *West v. Emmons 5 Johns.* 179. *Miller v. Drake 1 Caines* 45.

*Judgment on the verdict.*