1997 ME 88

**Albert R. GAGNE, et al.,**

v.

**Betsy H. STEVENS.**

Supreme Judicial Court of Maine.

Argued Nov. 7, 1996.
Decided April 29, 1997.

Kevin J. Beal (orally), Preti, Flaherty, Beliveau & Pachios, LLC, Portland, for plaintiff.

Waldemar G. Buschmann (orally), Week & Hutchins, Waterville, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, DANA, and LIPEZ, JJ.

LIPEZ, Justice.

[¶ 1] Albert R. Gagne (Gagne) and Gagne & Son Concrete Blocks, Inc. (Gagne & Son) appeal from the summary judgment entered in the Superior Court (Kennebec County, *Marden, J.*) in favor of Betsy H. Stevens (Stevens). Gagne contends that the court erred in its rulings that the purchase and sale agreement signed by Stevens violated the statute of frauds because it lacked a sufficient description of the land for sale, 33 M.R.S.A. § 51(4) (1988); that parol evidence was inadmissible to supply a precise description of the land to be conveyed; and that promissory estoppel could not be invoked to order specific performance. We disagree with Gagne's contentions and affirm the judgment.

### Background

[¶ 2] Gagne & Son manufactures concrete blocks and masonry supplies in Belgrade, Maine. Stevens's home is located on her family homestead, Lot 58 on the Town of Belgrade property map. *See* Attachment. After purchasing Lot 52 from Stevens in April 1986, Gagne claims that he discussed purchasing more property with Stevens and her husband and walked Lot 58 with them several times. Lot 58 consists of approximately 120 acres. Gagne asserts that these discussions and examinations of the property were the basis for his draft of the purchase

and sale agreement for some acreage in Lot 58. Stevens asserts, however, that she never discussed selling part of Lot 58 with Gagne until he appeared at her home on the evening of August 9, 1986.

[¶ 3] The details of that night's discussion are disputed. At its conclusion, however, Stevens signed an agreement to sell "Pete Gagne, Gagne & Son Concrete Block, a piece of lot # 58 on property map of the Town of Belgrade, in the approximate size of *30* ± [sic] in the sum of [$]*20,000*, located at the boundaries of the Foster Point Rd and Rt. 27 in Belgrade Me, also abutting to lot 59B. *To meet my approval on access.*" The agreement also states "I Betsy Stevens accept a check of *$100.00* as down payment with balance due when deed is completed." [1] The agreement was signed by Stevens and her husband Robert, but not by Gagne. Stevens cashed the deposit check shortly thereafter.

[¶ 4] Gagne claims that the agreement signed by Stevens gives him the right to take 30 acres anywhere on "the top of the hill" on Lot 58, next to Lot 59, as long as it is not too close to a neighboring pond or to the property of Colby College. He asserts that the agreement included no metes and bounds description of the parcel because it had never been separately surveyed or conveyed, and that when Stevens signed the agreement she orally gave him "permission to retain a surveyor and enter the property for" the purpose of arriving at a more formal description necessary for the deed that eventually would effect the conveyance. Gagne asserts that the written agreement was supplemented by this promise and by Stevens's conduct in walking the property with him and showing him the parcel she intended to convey, both before and after signing the agreement.

[¶ 5] Gagne eventually had a surveyor prepare a description of both the lot he wanted to purchase and possible access routes for Stevens's consideration. He explains his delay in hiring a surveyor by claiming that it did not make sense to prepare a metes and bounds description until Stevens designated the route of access to the parcel. Gagne alleges that Stevens made excuses over the next several years for not dealing with him, culminating in a refusal to meet with Gagne in 1990, ostensibly due to ill health. (The metes and bounds description of the approximately 27.7–acre lot to which Gagne asserts he is entitled, Parcel 1, and alternate access routes, Parcels 2 and 3, were set forth in his complaint and on the map appended thereto. *See* Attachment.)

[¶ 6] Stevens asserts that she "was under the impression [the agreement] was a commitment for future negotiations, not a final contract," and that Gagne was going to return for further meetings about "where the land was going to be." According to Stevens, during a telephone conversation with Gagne in March 1987, she told him she was no longer interested in selling part of Lot 58 and that she would be returning the $100 down payment, which she claims her husband delivered by hand to Gagne the next day. Gagne asserts that Stevens did not tell him that she no longer wanted to sell the land. He also asserts that Stevens did not return his deposit, nor attempted to rescind her promises or the agreement she signed.

[¶ 7] In February 1991 Gagne's attorney contacted Stevens to request a warranty deed conveying to Gagne Parcel 1 and the alternate access routes. [2] She refused to provide the deed and Gagne filed this action in October 1991. Stevens obtained a summary judgment on all counts, and this appeal followed.

### *Discussion*

#### *Standard of Review*

[¶ 8] In reviewing an appeal from a grant of a summary judgment, we view the

---

1. The underlining designates insertions handwritten on the typed agreement. Gagne claims that the only item left to be clarified was the route across the parcel to enable access to the gravel that might be located there, and that this clarification led Stevens to amend the draft purchase and sale agreement with the handwritten clause reserving her right to approve the route of access.

2. Neither Stevens's affidavit nor Gagne's complaint specify the proposed contents of the warranty deed. This statement about the proposed content of the deed is a plausible inference given the order of the relevant events.

evidence in the light most favorable to the party against whom the judgment was entered and review the court's decision for errors of law. *Gonzales v. Commissioner, Dept. of Public Safety,* 665 A.2d 681, 682 (Me.1995). When there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law, we affirm. *Id.* at 682–83. At the summary judgment stage of the proceeding, we determine whether the record before the court generates a genuine issue of material fact. *Casco Northern Bank, N.A. v. Edwards,* 640 A.2d 213, 215 (Me.1994). The court cannot decide an issue of fact no matter how improbable the opposing party's chances of prevailing at trial. *Tallwood Land & Development Co. v. Botka,* 352 A.2d 753, 755 (Me. 1976) (citing Field, McKusick & Wroth, 2 *Maine Civil Practice* § 56.4 at 39 (2d ed. 1970)). When contract language is ambiguous or uncertain, its interpretation is a question of fact to be determined by the fact finder; when the language is clear, its interpretation is a question of law for the court. *F.O. Bailey Co., Inc. v. Ledgewood, Inc.,* 603 A.2d 466, 468 (Me.1992). Whether an agreement is totally or partially integrated is a matter of law, *Harriman v. Maddocks,* 518 A.2d 1027, 1030 (Me.1986), as is a determination of a writing's sufficiency for purposes of the statute of frauds. *Simon v. Simon,* 35 Mass.App.Ct. 705, 625 N.E.2d 564, 567 (Mass.1994).

### *Statute of Frauds and Parol Evidence*

[¶ 9] Gagne contends that the purchase and sale agreement signed by Stevens was not a full expression of their understanding and that the court should have taken parol evidence into account in assessing whether the agreement was integrated and whether its description of the property to be

conveyed satisfies the statute of frauds, 33 M.R.S.A. § 51(4).[3] Gagne is correct in asserting that parol evidence of the parties' negotiations and mutual understandings is admissible on the preliminary question whether a written purchase and sale agreement concerning property is fully or partially integrated. *Clarke v. DiPietro,* 525 A.2d 623, 625 (Me.1987).[4] However, it remains "well settled that 'to satisfy the statute [of frauds], the memorandum must contain within itself, or by some reference to other written evidence ... all the essential terms of the contract, expressed with such reasonable certainty as may be understood from the memorandum and other written evidence referred to, (if any) without any aid from parol testimony.' " *Kingsley v. Siebrecht,* 92 Me. 23, 27–28, 42 A. 249 (1898) (citation omitted); *see also Busque v. Marcou,* 147 Me. 289, 293, 86 A.2d 873, 876 (1952) (a deficiency in a memorandum's recitation of the material conditions of the contract pursuant to the statute of frauds may not be supplied by parol evidence). As we explained more than a century ago, although a contract for the sale of land need not include a metes and bounds description, it "should ... describe[ ] the land with such certainty, that it could be understood from the writing itself, without parol proof; unless that appears in the writing itself, or by some reference, contained in it, to something else, which is certain, it does not comply with the statute...." *Jordan v. Fay,* 40 Me. 130, 132 (1855) (finding defective a memorandum that described the lot at issue "only [as] joining a small tract, now occupied by Michael Micue, and [with t]he location, size and shape of the lot ... entirely wanting in the description...."); *Thurlow v. Perry,* 107 Me. 127, 129, 77 A. 641 (1910) (designation of property to be sold must be sufficiently definite in written contract for the sale of lands); *see Restatement (Second)*

---

**3.** Section 51 states in pertinent part:
No action shall be maintained in any of the following cases: ... **4. Contract for sale of land.** Upon any contract for the sale of lands, tenements, or hereditaments, or of any interest in or concerning them; ... unless the promise, contract or agreement on which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith, or by some person thereunto lawfully authorized; but the consideration

thereof need not be expressed therein, and may be proved otherwise.

**4.** In *Clarke v. DiPietro,* however, we affirmed the use of parol evidence demonstrating that the buyer of property had promised the seller a 30-day period in which to unilaterally repudiate the contract, in exchange for signing it, to find fraud in the inducement justifying rescission of the contract. 525 A.2d at 625–26.

*of Contracts (Restatement)* § 131 cmt. e (1981) ("Without reference to executory oral promises, the memorandum in context must indicate with reasonable certainty the nature of the transaction and must provide a basis for identifying the land, goods or other subject matter."). This requirement relates to the statute's primary, evidentiary purpose: "to require reliable evidence of the existence and terms of the contract and to prevent enforcement through fraud or perjury of contracts never in fact made." *Restatement* § 131 cmt. c.[5]

[¶ 10] The purchase and sale agreement signed by Stevens describes the property to be conveyed as "a piece of lot # 58 on property map of the Town of Belgrade, in the approximate size of 30 ± [sic], in the sum of [$]20,000, located at the boundaries of the Foster Point Rd and Rt. 27 in Belgrade Me, also abutting to lot # 59 B." The plus-or-minus "30" acres to be conveyed refers to a portion of a tract larger than 120 acres. The agreement's reference to the size of the parcel alone, therefore, does not constitute a description of the property specific enough to satisfy the statute of frauds.[6] *See Michelson,* 39 N.E.2d at 635 (Mass.1942) (memorandum must contain a description of the land sold that applies to one parcel only and its language may not fit other parcels of land than the one for which the plaintiff contends); *White,* 644 P.2d at 325 (Idaho 1982) (where nothing in description served to "pinpoint exactly which 960 acres [of 9,000]

was to be transferred," agreement was too ambiguous to satisfy the statute of frauds); *Howell v. Inland Empire Paper Co.,* 28 Wash.App. 494, 624 P.2d 739, 740 (1981), *review denied,* 95 Wash.2d 1021 (1981) (when writing describes land only by quantity and as being part of a larger tract without identifying the particular land to be conveyed, it will not satisfy the statute of frauds); *Cash v. Maddox,* 265 S.C. 480, 220 S.E.2d 121, 122 (1975) (contract that gives no definite location or shape of the 15 acres to be conveyed, out of a 76–acre tract, is insufficiently specific to satisfy the statute of frauds).

[¶ 11] Moreover, the "boundaries" indicated in the purchase and sale agreement signed by Stevens serve only to confuse matters. According to the map appended to Gagne's complaint as Exhibit A (*see* Attachment), which does not identify Lot 59B at all, the corner where Foster Point Road meets Route 27 borders Lots 51 and 55, not Lot 58. Even if the "boundaries" provided by those two roads were otherwise plausible, the description in the purchase and sale agreement does not specify their length and leaves uncertain the third boundary that would be necessary to describe a discrete parcel of land. (Indeed, Parcel 1 as described in Gagne's complaint and on the accompanying map is defined by *six* boundaries—five straight lines and one segment of the Foster Point Road.) Thus, the land "described" in the purchase and sale agreement has an indefinite shape and location, and it is *impos-*

5. Once it is determined that a writing's description satisfies the statute of frauds, parol evidence may be employed for limited purposes, such as "identifying the description contained in the writing, with its location upon the ground," *White v. Rehn,* 103 Idaho 1, 644 P.2d 323, 325 (1982) (quoting *Craig v. Zelian,* 137 Cal. 105, 69 P. 853, 853–54 (1902)); showing that two or more writings are "so connected in the minds of the parties that they adopted all of them as indicating their purpose," *Tzitzon Realty Co., Inc. v. Mustonen,* 352 Mass. 648, 227 N.E.2d 493, 496 (1967); "interpret[ing] and apply[ing] the language of the memorandum in order to ascertain the meaning of the words there used," *Michelson v. Sherman,* 310 Mass. 774, 39 N.E.2d 633, 635 (1942); and supplying the "details which merely explain or clarify the essential terms appearing in the instrument." *Pick v. Bartel,* 659 S.W.2d 636, 637 (Tex.1983).

6. The exception for purchase and sale agreements that explicitly give the right to select the tract to be conveyed to one or the other of the parties does not apply to the facts of this case. *See Delaney v. Shellabarger,* 76 Nev. 341, 353 P.2d 903, 904 (1960) (contract giving purchaser the right to select particular part of larger tract) (collecting cases); *Holland v. Windsor,* 461 P.2d 47, 52 (Wyo.1969) (reservation of right to grantor to select portion of land to be conveyed); M.O. Regensteiner, Annotation, *Sufficiency, Under the Statute of Frauds, of Description or Designation of Land in Contract or Memorandum of Sale Which Gives Right to Select the Tract to Be Conveyed,* 46 A.L.R.2d 894, 897 (1956) (it is not essential that land to be conveyed be described with precision provided the writing furnishes the means or points out the method by which, without further agreement of the parties, the description might be ascertained (citing *Burgon v. Cabanne,* 42 Minn. 267, 44 N.W. 118 (1890))).

*sible* to locate within Lot 58. Finally, the description in the purchase and sale agreement does not match the 27.7 acres "more or less" of Parcel 1 identified on the map appended to Gagne's complaint, which is not bounded at all by Route 27.

[¶ 12] These multiple deficiencies in the writing's description of the property to be conveyed cannot be remedied by parol evidence. The court did not err in disregarding such evidence, nor in finding that the purchase and sale agreement's description of the land was not specific enough to satisfy the statute of frauds.[7]

*Promissory Estoppel*

[¶ 13] Gagne contends that the court erred in refusing to order specific performance of the purchase and sale agreement pursuant to the doctrine of promissory estoppel. Promissory estoppel may be invoked when a "promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *Restatement* § 90; *see Chapman v. Bomann*, 381 A.2d 1123, 1127 (Me.1978) (adopting the *Restatement* formulation of promissory estoppel). As the court asserted in its decision, it is impossible to order specific performance of "a contract of land not

described." Stevens made no promise specific enough to enforce. *See Masselli v. Fenton*, 157 Me. 330, 336, 172 A.2d 728 (1961) ("When the instrument leaves certain terms and conditions to be agreed upon and contemplates the execution of a final contract, it is not a contract that can be specifically enforced.").

[¶ 14] Moreover, specific performance of a contract that does not satisfy the statute of frauds is warranted only "if it is established that the party seeking enforcement, in reasonable reliance on the contract and on the continuing assent of the party against whom enforcement is sought, has so changed his position that injustice can be avoided only by specific enforcement." *Restatement* § 129; *see Busque v. Marcou*, 147 Me. 289, 294–95, 86 A.2d 873 (1952) (equity will grant relief to one who has fully or partially performed a contract that is unenforceable because it does not comply with the statute of frauds, but only on certain well established equitable principles such as a party's inducement by the other party to irretrievably change his position so that to refuse relief would otherwise amount to a fraud on his rights). Gagne generated no issue of material fact on such an irretrievable change in position.[8]

The entry is:

Judgment affirmed.

---

7. The alleged agreement was not defective because it was not signed by Gagne. To satisfy the statute of frauds, such a writing need be signed only by "the party to be charged therewith," 33 M.R.S.A. § 51; *Rulon–Miller v. Carhart*, 544 A.2d 340, 342 (Me.1988); *Thurlow v. Perry*, 107 Me. 127, 129–30, 77 A. 641 (1910); that is, it must be signed only by the party against whom enforcement is sought. *Barstow v. Gray*, 3 Me. 409, 415 (1825); *Restatement (Second) of Contracts* § 135 cmt. a (1981) ("party to be charged therewith" generally read to refer to the party to be charged in the legal proceeding).

8. Gagne also asserts that Stevens should have been "estopped" from asserting the "application

of the statute of frauds as a bar to appellants' complaint," but argues the issue only in terms relevant to the application of promissory estoppel. *See Chapman*, 381 A.2d at 1126–27, 1130 n. 6 (distinguishing between equitable and promissory estoppel); *Littlefield v. Adler*, 676 A.2d 940, 942 (Me.1996) (equitable estoppel applies when there is detrimental reliance on affirmatively, though not necessarily intentionally, misleading statements or conduct, including silence when there is a duty to speak). We therefore decline to address this contention.