STATE OF MAINE
ANDROSCOGGIN, ss.

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-99-083
EAG - AND - ᔕᐤ

PETER RAND, JEFFREY HOLT,
MICHAEL LAJOIE, CLINTON MASON,
GARRY APPLEBY, and ADAM TOWERS,
individually and on behalf of all others
similarly situated,
            Plaintiffs

v.                                                    ORDER

BATH IRON WORKS CORPORATION,
            Defendant

RECEIVED & F⁝   ⟩

FEB 0 1 2002
ANDROSCOGGIN
SUPERIOR COURT

FACTS AND PROCEDURAL HISTORY

In late summer of 1995, Bath Iron Works determined that it needed to hire approximately 100 electricians and pipefitters in order to meet the demands of its production schedules. The job openings were listed with the Maine Job Service, and advertised in local newspapers.

The individual plaintiffs applied for these positions, and were granted interviews during September 1995. The interviews were conducted by two-person teams that included a member of BIW management and a union representative. The representations allegedly made by the interviewers are at the heart of this lawsuit.

Plaintiffs contend that during the interviews they were assured that they would not be laid off, and that the jobs offered would continue indefinitely. Although the terms varied, each named plaintiff has asserted that he was orally promised employment for more than a year.

At the time of the listings, BIW and its unionized employees were subject to a collective bargaining agreement. This agreement contained a "no layoff" provision that protected those union employees who were working at BIW on August 22, 1994.

Although they would become members of the union when they began their jobs at BIW, the new employees would not be covered by this provision.

The plaintiffs have asserted that, at the time of the interviews, maintenance workers already employed at BIW were being trained as electricians and pipefitters. They claim that, because the trainees were not expected to be ready for a few months, and because additional workers were needed to meet then-existing production deadlines, BIW directed the interviewers to mislead the potential hires about the expected duration of the positions. The plaintiffs claim that BIW knew it would be unable to hire a sufficient number of experienced electricians and pipefitters if the potential workers knew that the positions were only temporary in nature. Defendant has denied that its interviewers made any misrepresentations about the expected duration of the new positions.

All of the named plaintiffs accepted jobs with BIW. None of them signed a written employment contract. The terms and conditions of employment at BIW are contained in the Collective Bargaining Agreement

On June 2, 1999, plaintiffs filed a complaint in Androscoggin County Superior Court. They filed an amended complaint on June 5, 999, and this has been the operative complaint throughout this action. The amended complaint included a request for class certification on behalf of all pipe fitters and electricians hired by BIW after August 1, 1995 and laid off on or about February 2, 1996, and sought declaratory and injunctive relief and actual and punitive damages based upon claims of contract, negligence, and intentional fraud, misrepresentation and concealment. At BIW's request, and without challenge by the plaintiffs, the action was removed from the Maine Superior Court to

2

the United States District Court in July of 1999. For the next two years, the parties conducted discovery and filed multiple motions with the Federal Court.

In an order dated June 5, 2001, the Federal Court remanded the case to this court, finding that "there is no basis for the federal subject-matter jurisdiction in this case." None of the dispositive motions was ever decided.

On August 31, 2001, defendant filed a motion for summary judgment on all counts of plaintiffs' amended complaint. On October 11, 2001, defendant filed a motion to transfer venue to Sagadahoc County, and on November 7, 2001, it filed a motion to strike the affidavit of Todd A. Stilphen. All three motions were argued on December 4, 2001.

The standards for decision on motions for summary judgment were addressed by the Law Court in *Champagne v. Mid-Maine Med. Ctr.*, 1998 ME 87, ¶¶ 5 & 9, 711 A.2d 842, 844-45:

> In reviewing a summary judgment, we examine the evidence in the light most favorable to the nonprevailing party to determine whether the record supports the conclusion that there is no genuine issue of material fact and that the prevailing party is entitled to a judgment as a matter of law. *See Petillo v. City of Portland*, 657 A.2d 325, 326 (Me. 1995). In testing the propriety of a summary judgment, we accept as true the uncontroverted facts properly appearing in the record. *See Gerber v. Peters*, 584 A.2d 605, 607 (Me. 1990) (citing Field, McKusick & Wroth, *Maine Civil Practice* § 56.4 at 357 (2d ed. Supp. 1981).
>
> . . . .
>
> Where a plaintiff will have the burden of proof on an essential issue at trial, and it is clear that the defendant would be entitled to a judgment as a matter of law at trial if the plaintiff presented nothing more than was before the court at the hearing on the motion for a summary judgment, the court may properly grant a defendant's motion for a summary judgment. *See Town of Lisbon v. Thayer Corp.*, 675 A.2d 514, 517 (Me. 1996); *Gerber*, 584 A.2d at 607; *see also* M.R. Civ. P. 50(a). To avoid a judgment as a matter of law for a defendant, a plaintiff must establish a *prima facie* case for each element of her cause of action. *See Fleming v. Gardner*, 658 A.2d

3

1074, 1076 (Me. 1995). A judgment as a matter of law in a defendant's favor is proper when any jury verdict for the plaintiff would be based on conjecture or speculation. *See id.; Barnes v. Zappia*, 658 A.2d 1086, 1089 (Me. 1995).

The discussion below is based upon the standards listed above.

## DISCUSSION

### 1. Venue

The motion to transfer Venue is denied. Although the parties and the court anticipate that this case will be transferred to Sagadahoc County for trial, venue for purposes of filing and docketing shall remain in Androscoggin County.

### 2. Todd Stilphen's affidavit

Defendant's motion to strike Mr. Stilphen's affidavit is also denied. Mr. Stilphen did not participate in the interviews with any of the named plaintiffs. However, as the union representative on the hiring team responsible for interviewing pipe insulators, he was trained for the interview process at the same time and place as those individuals who did interview the plaintiffs. Although defendants deny the accuracy of his affidavit, it is relevant to the pending motion.

### 3. Count I, Intentional Fraud, Misrepresentation and Concealment

In order to prevail in their action for fraudulent misrepresentation, plaintiffs must establish, by clear and convincing evidence (1) that BIW made a false representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard of whether it was true or false (4) for the purpose of inducing the plaintiffs to act in reliance upon it, and (5) that plaintiffs justifiably relied upon the representation as true and acted upon it to their damage. *Mariello v. Giguere*, 667 A.2d 588, 590 (Me. 1995).

4

BIW has argued that the plaintiffs are unable to establish *prima facie* evidence of the element of justifiable reliance.

As mentioned above, BIW has asserted that no false representations were made. If, for the purpose of this motion, the court assumes that there were misrepresentations, the court must then consider whether the plaintiffs have established *prima facie* evidence that their reliance on those misrepresentations was justified. Defendant has asserted that the plaintiffs could not justifiably rely on any oral promises of employment for an undefined period of time, because they knew that they would not be protected by the no-layoff clause. However, a plaintiff "may justifiably rely on a representation without investigating its truth or falsity of the representation unless the person knows that the statement is false or the falsity is obvious." *Francis v. Stinson*, 2000 ME 173, ¶ 39, 760 A.2d 209, 217. Neither the amount of work facing BIW nor the intended duration of the jobs offered was known by the plaintiffs, and the falsity of the statements, if any, was not obvious. Whether their reliance was justified is a question of fact.

Defendant's motion for summary judgment on Count I of plaintiffs' amended complaint is denied.

4. Count II, Negligence

Defendant has argued that the claims asserted in plaintiffs' negligence count are actually a claim for promissory estoppel—namely, that plaintiffs detrimentally relied on an alleged oral promise of continued employment at BIW. It asserted that this claim represents the plaintiffs' attempt to avoid the problems presented by their contract claims.

5

This argument, however, is not persuasive. Negligent misrepresentation is an independent cause of action in Maine; its elements are:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Chapman v. Rideout*, 568 A.2d 829, 830 (Me. 1990).

In *Gayer v. Bath Iron Works Corp.*, 687 A.2d 617 (Me. 1996)[1], the Law Court vacated summary judgment awarded to BIW on the same negligent misrepresentation theory advanced by the plaintiffs here. In its decision, the Court stated, "We find competent evidence in the record on which a factfinder could conclude that BIW knew at the time that offers were made to the apprentices that it would not be hiring outside applicants to the apprentice program." *Gayer*, 687 A.2d at 621. The court discussed internal BIW communications similar to those mentioned here, and concluded that the record presented "sufficient evidence that BIW failed 'to exercise reasonable care or competence in obtaining or communicating the information' on which the apprentices relied as to withstand a motion for summary judgment." *Id.*, (quotations in original).

The record presented in this case contains competent evidence sufficient to allow a factfinder to conclude that BIW negligently represented the temporary nature of the jobs offered. It is also possible that plaintiffs will be able to prove that they relied on these representations to their detriment.

---

[1] In *Gayer*, BIW hired twenty-six apprentices, but canceled the apprentice program three or four days before they were to begin work.

Based upon the above, defendant's motion for summary judgment on Count II of plaintiffs' amended complaint is denied.

4. Count III, Breach of Contract

In its motion for summary judgment on Count III of the plaintiffs' complaint, BIW argued that, because none of the plaintiffs signed an employment contract, all contractual claims were barred by the Statute of Frauds and/or by Maine's employment-at-will doctrine. Plaintiffs conceded that there were no written employment contracts, but argued that the fraud committed by BIW precluded summary judgment based upon the Statute of Frauds. In addition, plaintiffs have asserted that because specific periods were mentioned during the interviews—either "to the year 2000" (plaintiffs Rand, Holt, Lajoie and Mason), "at least a year" (plaintiff Towers), or "two to three years" (plaintiff Appleby) -- the employment offered was not so indefinite as to be terminable at will.

The primary purpose of the Statute of Frauds is to require reliable evidence of the terms of a given contract, and to prevent the enforcement of contracts that were never made. *Gagne v. Stevens*, 1997 ME 88, 696 A.2d 411 (Me. 1997). Although most frequently cited in property cases, this statute has been applied to claims of employment, based upon the following language:

> No action shall be maintained . . . [u]pon any agreement that is not to be performed within one year from the making thereof . . . unless the promise, contract or agreement on which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith . . . .

33 M.R.S.A. § 51(5). In *Popanz v. Peregrine Corp.*, 1998 ME 95 ¶ 5, 710 A.2d 250, 251, the Law Court held that "standing alone, Peregrine's oral promise creates no more 'than a contract of employment for an indefinite period of time . . . terminable at will by either

7

party.'" (quoting *Rancourt v. Waterville Osteopathic Hospital*, 526 A.2d 1385, 1389 (Me. 1987)). If the evidence is viewed in the light most favorable to the plaintiffs, it could support a finding that BIW orally promised the plaintiffs that their jobs would last for more than a year. If an action based on those oral promises is to be allowed, the plaintiffs must be able to must prove that BIW committed a fraud:

> We affirm that equitable estoppel, based upon the promisor's fraudulent conduct, can avoid application of the statute of frauds and that this principle applies to a fraudulent promise of employment . . . An employee who establishes an employer's fraudulent conduct by clear and convincing evidence may recover damages for deceit, or may avoid the statute of frauds and recover under an oral contract.

*Stearns, v. Emery-Warehouse*, 596 A.2d 72, 74-75 (Me. 1991) (quoting *Boivin v. Jones & Vining, Inc.*, 578 A.2d 187, 189 (Me. 1990)). Whether plaintiffs will be able to establish fraud is an issue of fact for the jury.

However, even if they could establish fraud and thus avoid the Statute of Frauds problem, the alleged promises of guaranteed employment were not for a definite period of time. At best, plaintiffs were employees at will, and could be laid off at any time. "In Maine, it has long been the rule that a contract of employment for an indefinite term is terminable at the will of either party." *Buchanan v. Martin Marietta Corp.*, 494 A.2d 677, 678 (Me. 1985). In *Buchanan*, the plaintiff was specifically promised employment until his retirement in 1991. Here, the best possible argument any plaintiff could make is that he was told that there would be sufficient work at BIW for at least a year, or until some future time. As a matter of law, the periods claimed are too indefinite.

Based upon the record presented, defendant's motion for summary judgment with regard to Count III of the amended complaint is granted.

8

5. Count IV -- Punitive Damages

Whether defendant's alleged conduct was motivated by actual ill will or was so outrageous that malice could be implied is a question of fact. The record contains sufficient evidence to avoid summary judgment on this claim. The defendant's motion for summary judgment on the punitive damages claims is denied.

### ORDER

1. The Motion to Transfer Venue is denied.

2. Defendant's Motion to Strike Mr. Stilphen's affidavit is also denied.

3. Defendant's motion for summary judgment on Count III of Plaintiffs' Amended Complaint is granted.

4. All other motions for summary judgment denied.

The clerk is instructed to incorporate this order by reference in the docket for this case.

DATED: February 1, 2002

Ellen A. Gorman,
Justice, Maine Superior Court

9

Date Filed ___June 2, 1999___ ___ANDROSCOGGIN___ Docket No. ___CV-99-83___
County

Action __HIRING PRACTICES/APPRENTICE PROGRAMS__

PETER RAND, Greene, Maine
JEFFREY HOLT, MICHAEL LAJOIE, CLINTON
MASON, GARRY APPLEBY, and ADAM TOWERS
individually and on behalf of all others
similarly situated

BATH IRON WORKS CORPORATION
Bath, Maine

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Jed Davis, Esq. BAR #1686<br>MITCHELL and DAVIS<br>86 Winthrop St.<br>Augusta, ME. 04330 | Christopher D. Nyhan, Esq.<br>Gregory Paul Hansel, esq.<br>PRETI, FLAHERTY, BELIVEAU, PACHIOS & HALEY,LL<br>One City Center, P.O. Box 9546<br>Portland, ME 04101-9546 |
| Michael S. Popkin, Esq. BAR #223<br>277 West end Ave., 15E<br>New York, NY 10023 | Jon A. Fitzgerald, Esq.<br>Jeffrey W. Peters, Esq.<br>PRETI, FLAHERTY, BELIVEAU, PACHIOS & HALEY, L<br>30 Front St., P.O. Box 665<br>Bath, ME 04530-0665 |

| Date of Entry | |
|---|---|
| 1999<br>July 13: | Received 6-2-99.<br>Filing fee paid. ($120.00) Rec. #36790.<br>Complaint Summary Sheet, filed.<br>Complaint, filed. |
| "   " | Received 6-15-99.<br>Amended Complaint, filed. |
| "   " | Received 7-1-99.<br>Acceptance of Service filed showing acceptance on 6-24-99 by Mark L. Haley, Esq<br>on behalf of Defendant Bath Iron Works Corporation. |
| "   " | On 7-13-99.<br>Case File Notices mailed Jed Davis, Esq. and Michael S. Popkin, Esq. |
| July 15: | Received 7-14-99.<br>Copy of Correspondence with attachments from Jon A. Fitzgerald, Esq. to<br>William S. Brownell, Clerk RE:  Notice of Removal to U.S. District Court,<br>filed. |
| 2001<br>June 7: | Received 6-6-01.<br>Certified copy of Order Remanding Case to the Maine Superior Court, filed.<br>    Accordingly, it is ORDERED that this case be, and it is hereby,<br>    remanded to the Maine Superior Court in and for the County of Androscoggin. |
| "   " | Entire original file including certified copy of docket entries from U.S.<br>District Court received and filed. |
| July 23 | On 07-20-01:<br>Status conference held.<br>Order filed.<br>Gorman, J. Presiding, No reporter present, Michael Popkin, Esq., Jed Davis,<br>Esq. for the Plaintiffs and Christopher Nyham, Esq. and Jeffrey Peters, Esq.<br>for the Defendant. |

STATE OF MAINE
ANDROSCOGGIN, ss.

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-99-083
EAG - AND - 10/6/2002

PETER RAND, JEFFREY HOLT,
MICHAEL LAJOIE, CLINTON MASON,
GARRY APPLEBY, and ADAM TOWERS,
individually and on behalf of all others
similarly situated,
          Plaintiffs

v.

BATH IRON WORKS CORPORATION,
          Defendant

RECEIVED & FILED

DEC 06 2002

ANDROSCOGGIN
SUPERIOR COURT

ORDER

DONALD L. GARBRECHT
LAW LIBRARY

JAN 21 2003

## FACTS AND PROCEDURAL HISTORY

In late summer of 1995, Bath Iron Works (BIW) decided to hire approximately 100 electricians and pipefitters in order to meet the demands of its production schedules. The job openings were listed with the Maine Job Service, and advertised in local newspapers.

The individual plaintiffs applied for these positions, and were granted interviews during September of 1995. For the most part, the interviews were conducted by two-person teams that included a member of BIW management and a union representative. The representations allegedly made by the interviewers are at the heart of this lawsuit.

Plaintiffs contend that during the interviews they were assured that they would not be laid off, and that the jobs offered would continue indefinitely. Although the terms varied, each named plaintiff has asserted that he was orally promised employment for more than a year.

At the time of the listings, BIW and its unionized employees were subject to a collective bargaining agreement. This agreement contained a "no layoff" provision that

protected those union employees who were working at BIW on August 22, 1994. Although they would have to become members of the Union when they began their jobs at BIW, the new employees would not be covered by this provision.

All of the named plaintiffs accepted jobs with BIW in October or November of 1995. None of them signed a written employment contract. All were laid off during the first part of 1996.

The plaintiffs have asserted that, at the time of the interviews, maintenance workers already employed at BIW were being trained as electricians and pipefitters. They claim that, because the trainees were not expected to be ready for a few months, and because additional workers were needed to meet then-existing production deadlines, BIW directed the interviewers to mislead the potential hires about the expected duration of the positions. The plaintiffs claim that BIW knew it would be unable to hire a sufficient number of experienced electricians and pipefitters if the potential workers knew that the positions were only temporary in nature. BIW has denied that its interviewers made any misrepresentations about the expected duration of the new positions.

On June 2, 1999, plaintiffs filed a complaint in the Androscoggin County Superior Court. They filed an amended complaint on June 5, 1999, and this has been the operative complaint throughout this action. The amended complaint included a request for class certification on behalf of all pipefitters and electricians hired by BIW after August 1, 1995 and laid off on or about February 2, 1996, and sought declaratory and injunctive relief and actual and punitive damages based upon claims of contract, negligence, intentional fraud, misrepresentation, and concealment. At BIW's request, and without challenge by the plaintiffs, the action was removed from the Maine Superior Court to the United States District Court in July of 1999. For the next two

2

years, the parties conducted discovery and filed multiple motions with the Federal Court. In an order dated June 5, 2001, the Federal Court remanded the case to this court, finding that "there is no basis for the federal subject-matter jurisdiction in this case."

On August 31, 2001, defendant filed a motion for summary judgment on all counts of plaintiffs' amended complaint. In February, the motion for summary judgment was granted as to the plaintiffs' claim for breach of contract. The remaining counts were considered during a bench trial that included thirty-two witnesses, countless exhibits, and seven days of testimony. After reviewing the evidence presented in light of the post-trial submissions by counsel, the court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. Count I, Intentional Fraud, Misrepresentation and Concealment

In order to prevail on their claim of fraudulent misrepresentation, the plaintiffs must establish, by clear and convincing evidence, that BIW made a false representation of a material fact, with knowledge of its falsity or in reckless disregard of its veracity, for the purpose of inducing the plaintiffs to act in reliance upon that representation. In addition, they must prove, by the same standard, that they justifiably relied upon the representation, to their detriment. *Mariello v. Giguere*, 667 A.2d 588, 590 (Me. 1995). After review of the evidence presented, the court finds that plaintiffs have failed to meet their burden.

### 1. False representation

Of all of the witnesses called by the parties, David Clark turned out to be the most important. Mr. Clark, who managed the planning and interview processes for BIW, consistently testified that, if asked, he would have said that he could only

3

guarantee work for two to three months. When viewed in a vacuum, his testimony suggests that BIW made a conscious decision to try to hire skilled workers to help it make certain short-term deadlines.

When viewed in light of all of the other evidence presented, however, Clark's testimony is more accurately seen as an explanation of the constant process of reassessing resource plans. On any given day, BIW must take into consideration the various work demands for multiple vessels. With the flux in production work orders, post-delivery repair or change-order requests, and weekly or even daily mismatches between work schedules and available employees, it is not possible to make an educated guess about the shipyard's needs more than ninety days in the future.

All of the people involved in the Resource Planning Team—both management and labor—believed that there was a long-term need for electricians and pipefitters. Unfortunately, but not predictably, intervening events, including the new owner's decision to substantially reduce the number of employees in the Facilities Department, caused their predictions to be inaccurate. After a careful review of all of the evidence presented, the court must conclude that plaintiffs have failed to prove, by clear and convincing evidence, that BIW made a false representation of the duration of employment offered.

2. Justifiable reliance

At the time that the plaintiffs were hired, BIW and the Union had recently signed a Collective bargaining Agreement that included a no layoff provision. All but one of the plaintiffs testified that this provision was discussed during the interview process. That one, Michael Lajoie, testified that he learned about that provision during the union orientation. Each of the plaintiffs acknowledged during trial that he would not be covered by the no layoff provision. None of the plaintiffs recalled being told that he

would have a job for any specific period of time, only that there was enough work for years to come.[1] The testimony from Peter Rand and from the other plaintiffs, provided a very clear indication that they heard no specific promises. Rand stated that, when he left the interview, he knew he could be laid off at any time. Nevertheless, he accepted employment because what he had heard about the work backlog sounded "pretty promising," and he figured that he would be there long enough to prove himself and his worth.

Because all of the plaintiffs knew they were not protected by the no layoff clause, and because the only "promises" made were that there was plenty of work, the court cannot find, by clear and convincing evidence, that the plaintiffs justifiably relied upon promises of long-term work.

B. Count II, Negligence

In order to prevail on their claims of negligent misrepresentation, plaintiffs must prove that, in the course of its business, BIW supplied false information for the plaintiffs' guidance in a business transaction, that it failed to exercise reasonable care or competence in obtaining or communicating the information, and that they suffered pecuniary loss as a result of their justifiable reliance on that information. *Chapman v. Rideout*, 568 A.2d 829, 830 (Me. 1990). Although the elements of this claim are very similar to those of fraudulent misrepresentation, here the plaintiffs need only prove each element by a preponderance of the evidence. Even under this reduced burden of proof, however, the plaintiffs have failed to make their case.

The evidence presented at trial convinced the court that when BIW decided to seek new employees in the late summer of 1995, it and its agents believed that the

---

[1] One of the witnesses, Victor Bouchard, testified that, when asked directly, Roger Stevens said that he would only be needed for a three-month period. This testimony was denied by Stevens, was not corroborated by any of the other witnesses, and is not supported by the exhibits.

additional persons hired would be needed to fulfill work obligations for the foreseeable future. That prediction turned out to be inaccurate for many of the persons hired, but a simple retrospective evaluation is not helpful. It was the plaintiffs' burden to prove, by a preponderance of the evidence, that BIW knew that it would only need the new employees for two or three months, and then gave false information to the contrary to the plaintiffs. The evidence presented in this case did not convince the court that BIW negligently represented the nature of the jobs offered.

## C. Count IV -- Punitive Damages

Because the plaintiffs have failed to establish that BIW committed fraud or negligent misrepresentation, their claim for punitive damages claims is denied.

### ORDER

Based upon the findings and conclusions above, judgment is granted to the defendant on counts I, II, and IV of plaintiffs' complaint.

The clerk is instructed to incorporate this order by reference in the docket for this case.

DATED: *December 6, 2002*

Ellen A. Gorman,
Justice, Maine Superior Court

Date Filed __June 2, 1999__ __ANDROSCOGGIN__ Docket No. __CV-99-83__
County

Action __HIRING PRACTICES/APPRENTICE PROGRAMS__

PETER RAND, Greene, Maine
JEFFREY HOLT, MICHAEL LAJOIE, CLINTON
MASON, GARRY APPLEBY, and ADAM TOWERS
individually and on behalf of all others
similarly situated

BATH IRON WORKS CORPORATION
Bath, Maine

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Jed Davis, Esq. BAR #1686<br>MITCHELL and DAVIS<br>86 Winthrop St.<br>Augusta, ME. 04330 | Christopher D. Nyhan, Esq.<br>Gregory Paul Hansel, esq.<br>PRETI, FLAHERTY, BELIVEAU, PACHIOS & HALEY,LI<br>One City Center, P.O. Box 9546 |
| Michael S. Popkin, Esq. BAR #223<br>277 West end Ave., 15E<br>New York, NY 10023 | Portland, ME 04101-9546<br>~~Jon A. Fitzgerald, Esq.~~ (left firm)<br>Jeffrey W. Peters, Esq.<br>PRETI, FLAHERTY, BELIVEAU, PACHIOS & HALEY, I |

| Date of Entry | |
|---|---|
| | 30 Front St., P.O. Box 665<br>Bath, ME 04530-0665 |

| Date of Entry | |
|---|---|
| 1999<br>July 13: | Received 6-2-99.<br>Filing fee paid. ($120.00) Rec. #36790.<br>Complaint Summary Sheet, filed.<br>Complaint, filed. |
| "   " | Received 6-15-99.<br>Amended Complaint, filed. |
| "   " | Received 7-1-99.<br>Acceptance of Service filed showing acceptance on 6-24-99 by Mark L. Haley, Esq<br>on behalf of Defendant Bath Iron Works Corporation. |
| "   " | On 7-13-99.<br>Case File Notices mailed Jed Davis, Esq. and Michael S. Popkin, Esq. |
| July 15: | Received 7-14-99.<br>Copy of Correspondence with attachments from Jon A. Fitzgerald, Esq. to<br>William S. Brownell, Clerk RE:  Notice of Removal to U.S. District Court,<br>filed. |
| 2001<br>June 7: | Received 6-6-01.<br>Certified copy of Order Remanding Case to the Maine Superior Court, filed.<br>    Accordingly, it is ORDERED that this case be, and it is hereby,<br>    remanded to the Maine Superior Court in and for the County of Androscoggin. |
| "   " | Entire original file including certified copy of docket entries from U.S.<br>District Court received and filed. |
| July 23 | On 07-20-01:<br>Status conference held.<br>Order filed.<br>Gorman, J. Presiding, No reporter present, Michael Popkin, Esq., Jed Davis,<br>Esq. for the Plaintiffs and Christopher Nyham, Esq. and Jeffrey Peters, Esq.<br>for the Defendant. |