ELLA C. KINGSLEY *vs.* HENRY A. SIEBRECHT.

Hancock.    Opinion July 22, 1898.

*Stat. of Frauds.    Memorandum.    Lease.    Principal and Agent.    Evidence.*
*Action.    R. S., c. 111, § 1, par. 4.*

A contract for the purchase of an assignment of a written lease is within the
statute of frauds, R. S., c. 111, § 1, par. 4, and must therefore be in writing,
signed by the parties, etc., to be binding; but a sufficient "memorandum or
note thereof in writing" may be evidenced by letters and telegrams.

The statute of frauds does not change the law as to the rights and liabilities
of principals and agents, either as between themselves or as to third persons.
The provisions of the statute are complied with if the names of competent
contracting parties appear in the writing; and if one of the parties be an
agent, it is not necessary that the name of the principal shall be disclosed
in the writing.

If a contract, within the statute of frauds, be made by an agent, whether the
agency be disclosed or not, the principal may sue or be sued thereon as in
other cases, and *it is accordingly held;* that the plaintiff in this case may show
by parol that she was the real principal, although a third person, her general
agent, appeared to be such in the writings.

In order to constitute a sufficient memorandum under the statute of frauds, the
subject matter of the contract must be so certainly described that no oral
testimony is needed to supply any necessary terms or conditions.

*Held;* that the date of a lease and its duration are essential elements of a con-
tract and the want of them in a memorandum cannot be supplied by parol.
But when the lease, which is itself in writing, discloses these terms, and it is
so connected with the other writings, (the letters and telegrams between the
parties,) as to become a part of the memorandum, and when the connection
becomes apparent from a comparison of the writings themselves without the
aid of parol testimony, a perfect contract is made out.

In an action upon a contract in which the plaintiff alleged that the defendant
agreed to pay her for an assignment of a written lease followed by a tender
of the assignment and refusal to pay, the defendant pleaded the statute of
frauds, and also that the contract as alleged became inoperative by reason of
a subsequent and independent contract made between the parties essentially
different from that as stated and claimed by the plaintiff, and which he, the
defendant, was always ready to perform, but that the plaintiff refused. As
to the latter contention of the defendant the court being satisfied that the
proof is otherwise, *it is held;* that the original contract remained in force.

ON REPORT.

This was an action of assumpsit to recover damages from the defendant for breach of an alleged contract by the defendant to pay six hundred dollars, and take an assignment of a lease. The writ is dated April 28, 1896.

The declaration is as follows:—

In a plea of the case, for that the plaintiff being possessed of the lease of a certain piece of land situated in Bar Harbor, in said Eden, which said lease was dated April 27, 1895, in which said plaintiff agreed to pay to the lessor, one T. L. Roberts, the sum of two hundred and fifty dollars per year rental, with the privilege of buying said premises at any time within ten years from said April 25th for the sum of three thousand dollars, and that heretofore, to wit, on the fifteenth day of January, A. D. 1896, by means of certain notes and memoranda in writing, it was agreed by and between the plaintiff and the said defendant, that the said plaintiff should sell and assign said lease with all its rights and privileges in said premises to the said defendant, and in consideration thereof the defendant then and there agreed to pay to the said plaintiff the sum of six hundred dollars. And the plaintiff avers that pursuant to her said agreement and relying upon the aforesaid promise of the said defendant, she tendered to the said defendant an assignment of said lease, duly signed and sealed by her, said plaintiff, but that the defendant then and there wholly refused to receive the same and then and there refused to pay to said plaintiff said sum of six hundred dollars or any part thereof.

Plea, general issue and brief statement setting up the statute of frauds; also a new and independent verbal arrangement entered into at Boston by way of substitution of any previous contract between the parties.

After the evidence was taken out, by consent of counsel the case was withdrawn from the jury and reported to the law court, it ·to pass upon all questions of law and fact involved, and to have the same right that a jury would have to draw inferences. If it should be decided that an action could be sustained, the law court was to assess the damages for the plaintiff.

The facts are stated in the opinion.

*L. B. Deasy (B. E. Clark* with him) for plaintiff.
*A. W. King* and *E. S. Clark,* for defendant.

There is no sufficient description of the subject matter of the alleged agreement. Nothing in the correspondence determines the time when the lease term began, or was to end. 8 Am. & Eng. Ency. p. 725, note (2); *Farwell* v. *Mather,* 10 Allen, 322.

The name of the vendor does not sufficiently appear. *Williams* v. *Robinson,* 73 Maine, p. 195; *Grafton* v. *Cummings,* 99 U. S. 100.

New agreement: It is an undisputed condition, arrived at in Boston, that the papers were to be made satisfactory to the defendant's attorney before the money was paid over. *Dana and Henry* v. *Hancock,* 30 Vt. 616.

SITTING: PETERS, C. J., HASKELL, WISWELL, SAVAGE, FOGLER, JJ.

SAVAGE, J. The plaintiff alleges in her declaration that the defendant contracted to pay her $600 for the assignment to him of a written lease of a certain parcel of land in Bar Harbor from T. L. Roberts to her, dated April 27, 1895, for the term of ten years from that date, at a rental of $250 per year, with the privilege of buying the land at any time within the ten years for $3000; that she has tendered to the defendant an assignment of the lease, but that the defendant refused to receive the lease, and refused to pay the six hundred dollars.

The defendant pleads the statute of frauds. He also alleges that if any such contract was made as is alleged by the plaintiff, "the same became inoperative by reason of a subsequent and independent contract made between the parties in relation to the transfer of said leasehold interest, by which subsequent agreement the defendant agreed to purchase of the plaintiff the said leasehold interest together with a strip of land one foot wide and extending along the side of the lot covered by the lease, and to pay therefor the sum of $600," and that the plaintiff agreed to sell to the defendant both the leasehold interest and the one foot strip for

$600; and the defendant says that he has always been ready to perform the substituted contract, but that the plaintiff has refused.

So far as the latter contention of the defendant is concerned, it is sufficient to say that we think the proof is otherwise.

The plaintiff's agent having general charge of this business was Mr. T. F. Moran.    After certain correspondence between Mr. Moran and the defendant, which ended in a proposition by Moran and an acceptance of the proposition by the defendant, Moran and the defendant arranged for a meeting in Boston to consummate the trade.    Moran telegraphed to the defendant to "come prepared to buy the one-foot lot," to which reference had been made in their correspondence.    Instead of going to Boston himself, Moran intrusted the lease and assignment which had been the subject matter of their correspondence, and a deed of the "one-foot lot," to Mr. E. H. Greely to deliver to the defendant.    Greely met the defendant in Boston, and the defendant claims that the new and substituted contract was there made between himself and Greely. From the testimony of the defendant himself, it is not clear that the new contract which is set up was made.    The defendant testifies, in substance, that he claimed to Greely that the trade between him and the plaintiff covered both the lease and the one-foot strip, that both were to be conveyed to him for the $600, but he also testifies that Greely told him that he had no instructions at all from Mr. Moran in regard to the "extra foot."    Mr. Greely, testifying, denies that any new contract was made, and says that he named to the defendant a price for the one-foot strip, and that the defendant "thought he would do nothing about that at the time." But whatever may have been attempted in the way of making a new contract, there is no evidence that Greely had any authority to make a new contract, or that, if any was made, it was ever ratified by the plaintiff.

It appears that when the assignment of the lease was examined by the defendant in Boston, it was discovered that the original lessor, Roberts, had not consented in writing to the assignment as was stipulated in the lease itself, and thereupon it was mutually agreed that the papers should be sent back to Bar Harbor, in order

that Mr. Roberts' consent might be obtained. And this, we are satisfied, was the only arrangement entered into in Boston between the defendant and Greely.

We now recur to the other contention of the defendant, that the contract on which this action is brought is a contract for the sale of an interest in land, and that the action cannot be maintained for want of a sufficient memorandum to satisfy the statute of frauds. The subject matter of the contract is the lease itself, not the land. Still the contract is for "an interest in or concerning" land, and hence is within our statute of frauds, R. S. ch. 111, § 1, par. 4. And the contract being within the statute, we must now inquire whether there is a sufficient "memorandum or note thereof in writing."

The plaintiff relies upon certain letters and telegrams between T. F. Moran and the defendant as a sufficient memorandum to satisfy the statute. She also offers a lease from T. L. Roberts to herself, and claims that it is the lease referred to in the correspondence between Moran and the defendant, and that it should be taken as a part of the memorandum. The defendant contends that the lease is not admissible as a part of the memorandum, because it does not appear upon its face, and without the aid of parol evidence, to be the lease referred to, and because the plaintiff, named as lessee in the lease, is not in any way referred to in the correspondence; in other words, that in the correspondence Moran appears to be the owner of the lease, while the lease offered shows the plaintiff to be the owner. And it is contended that parol evidence is inadmissible to connect the two. Then the defendant contends that the letters and telegrams alone do not constitute a sufficient memorandum, because the plaintiff's name nowhere appears, nor is she described, in the correspondence, and because the correspondence is silent as to when the leasehold term began or when it was to end.

It is well settled that " to satisfy the statute, the memorandum must contain within itself, or by some reference to other written evidence, the names of the vendor and vendee, and all the essential terms and conditions of the contract, expressed with such

reasonable certainty as may be understood from the memorandum and other written evidence referred to, (if any) without any aid from parol testimony." *Williams* v. *Robinson*, 73 Maine, 186. In this case, it is true that the plaintiff's name does not appear anywhere in the letters and telegrams. They are all between the defendant and T. F. Moran, and Moran is apparently negotiating as owner of the lease. But the case discloses, by parol testimony, that Moran was the plaintiff's agent, and that the plaintiff herself was an undisclosed principal. Two questions arise. First, may the undisclosed principal sue upon a contract made in the name of her agent? and secondly, is it competent for the undisclosed principal to show by parol that the party appearing in the memorandum to be the contracting party was her agent only, and contracted in her behalf, and thus be enabled to maintain an action on the contract?

We think both questions must be answered in the affirmative. The authorities are numerous and decisive that the contract of the agent is in law the contract of the principal, and the latter can come forward and sue thereon, although at the time the contract was made the agent acted and appeared to be the principal.

In *Wilson* v. *Hart*, 7 Taunton, 295, Parke, B., said: "It is the constant course to show by parol evidence whether a contracting party is agent or principal." In *Eastern R. R. Co.* v. *Benedict*, 5 Gray, 561, the court said that "the rule that the principal may sue in his own name upon a contract made with his agent applies to cases of sales by written bills or other memoranda made by the agent, using his own name, and disclosing no principal," the same 'as in cases of oral contracts. *Tainter* v. *Lombard*, 53 Maine, 371; *Barry* v. *Page*, 10 Gray, 399; *Winchester* v. *Howard*, 97 Mass. 305; *Sims* v. *Bond*, 5 Barnwell & Adolphus, 393; *Huntington* v. *Knox*, 7 Cush. 371; *Exchange Bank* v. *Rice*, 107 Mass. 37; *Byington* v. *Simpson*, 134 Mass. 169.

And the great weight of authority, we think, sustains the proposition that in case of a memorandum within the statute of frauds, where the name of the agent only appears, it may be shown by parol who the principal is, in support of an action by the latter.

In *Higgins* v. *Senior*, 8 M. & W. 834, it is declared that "there is no doubt that where such an agreement is made, it is competent to show that one or both of the contracting parties were agents for other persons, and acted as such agents in making the contract, so as to give the benefit of the contract on the one hand to, and charge with liability on the other, the unnamed principals; and this, whether the agreement be or be not required to be in writing by the statute of frauds; and this evidence in no way contradicts the written agreement. It does not deny that it is binding on those whom on the face of it, it purports to bind, but shows that it also binds another by reason that the act of the agent, in signing the agreement, in pursuance of his authority, is in law the act of the principal."

"Parol evidence is always necessary to show that the party sued is the person making the contract and bound by it. Whether he does so in his own name, or in that of another, or in a feigned name, or whether the contract be signed by his own hand, or by that of an agent, are inquiries not different in their nature from the question who is the person who has just ordered goods in a shop. If he is sued for the price and his identity is made out, the contract is not varied by appearing to have been made by him in a name not his own." *Trueman* v. *Loder*, 11 Ad. & Ell. 589.

The statute of frauds does not change the law as to the rights and liabilities of principals and agents, either as between themselves, or as to third persons. The provisions of the statute are complied with if the names of competent contracting parties appear in the writing, and if a party be an agent, it is not necessary that the name of the principal shall be disclosed in the writing. Indeed, if a contract, within the provisions of the statute, be made by an agent, whether the agency be disclosed or not, the principal may sue or be sued as in other cases. *Thayer* v. *Luce*, 22 Ohio St. Rep. 62; *Pugh* v. *Chesseldine*, 11 Ohio St. Rep. 109; *Dykers* v. *Townsend*, 24 N. Y. 57; *Lerned* v. *Johns*, 9 Allen, 419; *Hunter* v. *Giddings*, 97 Mass. 41; *Williams* v. *Bacon*, 2 Gray, 387; *Salmon Falls Mfg. Co.* v. *Goddard*, 14 How. 446; Browne on the Statute of Frauds, § 373; 3 Parsons on Contracts, 5th Ed. p. 10.

Judge Story, after stating the doctrine, said: "The doctrine thus asserted has this title to commendation and support, that it not only furnishes a sound rule for the exposition of contracts, but that it proceeds upon a principle of reciprocity, and gives to the other contracting party the same rights and remedies against agent and principal which they possess against him." Story on Agency, § 160 a. See also cases cited in note to *Wain* v. *Warlters*, 2 Smith's Leading Cases at page 252.

The case of *Grafton* v. *Cummings*, 99 U. S. 100, is relied upon by the defendant. But that case, we think, is clearly to be distinguished from the case at bar. That case grew out of an auction sale, and involved a construction of the New Hampshire statute of frauds. The memorandum was signed by the auctioneer and vendee, but did not disclose who the vendor was. The court held that the memorandum was insufficient, saying, "It is very clear that Walker [auctioneer] did not intend to hold himself out as the vendor in this case, because he described himself as auctioneer and agent for both parties. If he had been sued on this contract by Grafton for failing to tender sufficient deeds of conveyance, it would have been a good answer to the action that he describes himself in the paper on which he is sued as merely an auctioneer in the matter, and in that sense as agent, and not principal. . . . What did he mean by placing his name there? It can have no other fair meaning than simply to say, as he does, I was the auctioneer who struck off this property." In *Grafton* v. *Cummings*, no one was named in the memorandum as contracting to sell. In the case at bar, Moran is named. There, the auctioneer would not have been liable on the contract; here, Moran would have been liable.

The distinction is well stated in *McGovern* v. *Hern*, 153 Mass. 308. "The trouble with the memorandum in the case before us is that the seller is not named nor described. Sullivan Brothers were indicated in one corner of the paper as the auctioneers, and it cannot be fairly considered that they were anything else. Their function as auctioneers was recognized in the memorandum, as something distinct from that of parties contracting for unnamed principals."

· *Grafton* v. *Cummings*, supra, was decided on the authority of *Sherburne* v. *Shaw*, 1 N. H. 157, in which it is stated that the "writings disclose the name of no person to whom the defendant was liable." This was also the case of an auctioneer's memorandum. So were *Nichols* v. *Johnson*, 10 Conn. 192; *O'Sullivan* v. *Overton*, 56 Conn. 105, which were cited by the defendant. When such a memorandum fails to show who the contracting party was, the auctioneer's signature does not aid, for the auctioneer is not a party nor liable. It is not a case of an undisclosed principal, for in such a case the agent is liable.

*Salmon Falls Mfg. Co.* v. *Goddard*, supra, is doubted in *Grafton* v. *Cummings*, and the dissenting opinion of Mr. Justice Curtis is referred to with approval. But examination shows that these two cases rest upon entirely different grounds, and that Mr. Justice Curtis dissented in the former case only on the ground that the memorandum in question failed to show which party was vendor, and which was purchaser. And the learned Justice used this significant language: "It is one thing to show that a party who appears by a writing to have made a contract made it as an agent, and quite a different thing to prove by parol that he made a purchase, when the writing is silent as to that fact."

There is no question but that the memorandum must name or describe two contracting parties, as in this case, a seller and a buyer, but the doctrine of the cases we have cited is to the effect that if one of the parties named is merely an agent, the undisclosed principal may be shown by parol. Accordingly, we hold that the plaintiff may show by parol that she was the real principal, although Moran appeared to be such in the memorandum.

We are next confronted by the objection that it does not appear in the correspondence when the leasehold term began or when it was to end. The letters and telegrams are indeed silent on this subject. In order to constitute a sufficient memorandum, the subject matter, the lease in this case, must be so certainly described that no oral testimony is needed to supply any necessary terms or conditions. The date of a lease for years, the remaining time it has to run, is obviously an essential item in the description of the

interest created by it. Without that being fixed, the whole interest under the lease is indeterminate. It is an essential element of the contract, and must be completely stated in the memorandum. The want of it cannot be supplied by parol.

This point, therefore, is well taken by the defendant, and must prevail, unless the lease offered by the plaintiff can be read into the memorandum.

The letters and telegrams refer to a lease. The plaintiff contends that the lease thus referred to is the lease she offers, and that it is to be read as a part of the memorandum. If this be so, the lease, which is itself a writing, discloses the missing terms, the time when the leasehold interest began and when it was to end. Can this lease be connected with the letters and telegrams so as to become a part of the memorandum, without the aid of parol testimony? Parol evidence can only bring together the different writings. It cannot connect them. They must show their connection by their own contents. The connection must be apparent from a comparison of the writings themselves. *Freeport* v. *Bartol,* 3 Maine, 340; *O'Donnell* v. *Leeman,* 43 Maine, 158. We will now apply this test.

The defendant in a letter to Moran, dated December 18, 1895, inquired: "What are the best terms you can make us on the lot next to the Brick Block on Main St., on a lease, with privilege of buying before the lease expires, at a price with or without that extra foot, which I believe you own next adjoining the Brick Building?" The context shows that the property was in Bar Harbor. December 20, 1895, Moran answered: "I think I gave you price on the lot adjoining the Brick Block. . . . I think I told you I would sell you the lease for a small bonus (10 year lease.)" January 9, 1896, defendant wrote to Moran: "I asked you to give me the amount of rent, the lowest price at which it can be purchased for, within the time you have the lease; also what bonus you want for your option." In answer to this, Moran wrote to the defendant, January 11, 1896, "Yours received, and in reply will say that the lot 25 x 60 on Main St. is leased for 10 years at $250 a year, with privilege of buying at any time during the term for

$3000. I have paid one year's rent in advance, and will turn over my lease to you for $600." Thereupon the defendant telegraphed Moran, January 13, 1896, "I accept your offer. Meet me with all necessary legal papers at Quincy House, Boston, Wednesday morning.                                    H. A. SIEBRECHT."

All of these writings refer, on their face, to the same lease. It was a ten year lease of a lot in Bar Harbor, with a rental of $250 a year, and an option of purchase at any time during the term for $3000. The lot was 25 by 60 feet in size. It was situated on Main Street, and was on the same side of the street as the Brick Block, for it "adjoined" it. It was one foot distant from the Brick Building, "that extra foot, which," the defendant in his letter of December 18, 1895, says, "I believe you (Moran) own next adjoining the Brick Building."

Now if we turn to the lease offered by the plaintiff, we find that it answers every particular called for by the correspondence. On its face it shows that it was a ten year lease of a lot of land in Bar Harbor, on Main Street, twenty-five feet by sixty feet in dimensions, adjoining and one foot distant from the lot known as the Brick Block lot. It yielded a rental of $250 per annum. It contained an option of purchase at any time during the term for $3000. Can there be any doubt that the lease offered by the plaintiff is the lease referred to in the correspondence? We think not. The writings connect themselves. The only other possible lot to which the description in the correspondence could apply would be a lot on Main Street on the other side of the Brick Block. But the court in *Hurley* v. *Brown*, 98 Mass. 545, answering a similar hypothesis, said: "We think the presumption is strong that a description which actually corresponds with an estate owned by a contracting party is intended to apply to that particular estate, although couched in such general terms as to agree equally well with another estate which he does not own." See also *Mead* v. *Parker*, 115 Mass. 413.

The lease, therefore, may be read into the memorandum. It supplies all the missing elements. It shows particularly that the

leasehold interest contracted for was for a term of ten years from April 27, 1895.

The contract alleged, and the failure of the defendant to perform it, are both proved by the requisite evidence. The plaintiff is entitled to recover her damages, that is, the difference between the agreed price and the fair value of the leasehold interest, subject to the payment of the rent reserved. On this point the testimony is conflicting. The rent had been paid in advance to April 27, 1896. The testimony discloses estimates of the value of the leasehold interest, ranging from nothing to six hundred dollars.

Upon the whole, we think the plaintiff's damages may be fairly assessed at four hundred dollars.

*Defendant defaulted.*