STATE OF MAINE                          SUPERIOR COURT
CUMBERLAND, ss.                         CIVIL ACTION
                                        DOCKET NO: CV-11-14
                                        JAW-CUM-6/4/2012

THOMAS W. THOMSEN

            Plaintiff,

    v.

BARBARA H. WARD

            Defendant



STATE OF MAINE
Cumberland ss. Clerk's Office

JUN 04 2012

RECEIVED

## ORDER AND DECISION ON PENDING MOTIONS

Before the court are three pending motions in the above action. The motions have been fully briefed by the parties and oral argument was heard in this court on April 13, 2012.

### I.  Motion to Extend Time for Discovery

The Plaintiff filed this motion on November 21, 2011, seeking to extend the discovery period to December 20, 2011. The discovery deadline was November 18, 2011. The reason given for this request is that the Defendant has raised a statute of limitations defense making the parties' positions too disparate for successful settlement and requiring the Plaintiff to need the additional time to conduct depositions of additional witnesses.

The Defendant opposes this motion on the grounds that the motion is untimely; that there is no proffer of the proposed witness's testimony that would assist the court in determining the value of the request; that no excuse for not having completed discovery within the time frame given is offered, which is especially problematic given that the statute of limitations defense was raised as

1

an affirmative defense in the Answer; and that the Defendant would be prejudiced by having to incur the costs of additional, needless depositions.

The Plaintiff has not offered the court sufficient reason to extend the discovery deadline in this case. In particular, because the motions for summary judgment have been filed and argued the request is moot. Even if this case proceeds to trial, the Plaintiff has not demonstrated an adequate excuse for failing to prepare a defense on a key element of the Defendant's case.

## II. Motion to Consolidate

The Plaintiff also moves to consolidate this case and the case captioned Thomas M. Thomsen v. Ronald N. Ward and Barbara H. Ward, CUMCV-11-153, pursuant to M.R. Civ. P. 42(a). M.R. Civ. P. 42(a) states that when actions involving common questions of fact or law are pending before the court, the court may, "order a joint hearing or trial of any and all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders, concerning the proceedings therein as may tend to avoid unnecessary costs or delay." An order for a full consolidation causes the actions to have the same consequences as if a single action had been brought at the beginning, whereas, an order for a joint hearing or trial does not have such effect, i.e. a motion to amend judgment in one action does not toll the appeal period for the other action. 3 Harvey, *Maine Civil Practice*, § 42.3 at 39 (3rd ed. 2011).

Thomsen brought this action (CUMCV-11-14) against Barbara Ward seeking recovery for her failure to repay a promissory note, a series of loans and to fully remunerate for construction work provided to Barbara and/or her corporation. In the second action (CUMCV-11-153) Thomsen alleges that Barbara transferred assets to and/or incurred obligations from her husband,

2

Ronald, in violation of Maine's Uniform Fraudulent Transfers Act (14 M.R.S. §§ 3571-3582.) The complaint in CV-11-153 requests a jury trial and in this action, defendant Ward has recently also requested a jury trial.[1]

As the grounds for granting this motion, the Plaintiff points to the existence of the debt owed by Barbara Ward and the facts and circumstances surrounding the sale of the Danforth Inn as the common question of fact and the statute of limitations defense as the common question of law. He also asserts that, if the cases are not consolidated, Robert Ward would not be bound by the determination of Barbara Ward's liability to Thomsen, thus potentially requiring re-litigation of the issue and potentially resulting in inconsistent findings. The Defendant opposes the motion on the grounds of untimeliness because the second case was already pending when the deadline for joinder of parties and amendment of pleadings passed in this action, and that the actions do not involve common issues of fact. The Defendant alleges that the issue of fact are not <u>common</u> but rather the questions of fact in this action must be determined before the questions of fact in the second action can be determined: that is, Barbara Ward's liability to Thomsen is an element of his fraudulent transfer claim.

"Collateral estoppel prevents a party from relitigating factual issues already decided if the identical issue necessarily was determined by a prior final judgment, and the party estopped had a fair opportunity to litigate the issue in the prior proceeding." *Efstathiou v. Efstathiou*, 2009 ME 107, ¶ 7, 982 A.2d 339 (internal quotation marks removed). A party asserting collateral estoppel against

---

[1] There are three pending motions in CV-11-153: a motion to extend discovery (contingent upon the resolution of the statute of limitations question in this action), a motion to amend the complaint, and an identical motion to consolidate.

3

a non-mutual party has the burden of proving the party was in privity – having a commonality of ownership, control, and interest in a proceeding – with a mutual party. *Beal v. Allstate Ins. Co.*, 2010 ME 20, ¶¶ 18, 20, 989 A.2s 737.

Here, Ronald is not in privity with Barbara and he would not be bound by the determination of her liability in this case. In the interest of judicial economy and because of the common questions of law and fact, these cases should be and are consolidated.

## III. Motions for Summary Judgment

The Plaintiff asserts he loaned money to Defendant Ward over the time period May 2003 to June 2005, amounting to $182,900 and performed "construction services" on "The Danforth Inn," owned by Winter Danforth Corporation with Barbara Ward as the sole shareholder, and that Ward agreed to pay for those services and repay the loans out of the proceeds of the sale of the Danforth Inn. Ward has not paid Thomsen for the construction services and has not repaid the amount allegedly owed on the loans. The Plaintiff has brought a six-count complaint and the Defendant moves for summary judgment on Counts II through VI:

- Count II: breach of contract for construction services rendered
- Count III: unjust enrichment for those same services
- Count IV: quantum meruit for those same services
- Count V: breach of contract for loan monies
- Count VI: unjust enrichment for those same loaned monies

The Plaintiff has cross-moved for summary judgment on the same counts.

4

## Statement of Facts

Defendant Barbara Ward née Hathaway and Plaintiff Thomsen met in 1993 or 1994 and had a romantic relationship between 1995 and 2000. (Pl. Add'l SMF ¶¶ 24-25.) After 2000, Ward and Thomsen remained friends. (Pl. Add'l SMF ¶ 26.) Ward was owner of the Danforth Inn, first opened in 1994, by virtue of 100 percent ownership of the shares in the Winter Danforth Company. (Def. SMF ¶ 19[2]; Pl. Add'l SMF ¶¶ 20, 23.) From the beginning she planned to renovate and expand the historic property. (Pl. Add'l SMF ¶¶ 22-23.) The Inn generated a profit in 1999 and 2000 but after the events of September 11, 2001, and the increased supply of hotel rooms in Portland during that time, the Danforth was no longer profitable. (Pl. Add'l SMF ¶¶ 27-28.)

By 2003, Ward had difficulty paying the mortgage on the Inn. (Pl. Add'l SMF ¶ 37.) Thomsen alleges that, as a friend helping a friend in need, he agreed to help Ward by performing construction services to expand and renovate the Inn to make it more marketable and he agreed to loan her money to prevent default. (Pl. Add'l SMF ¶¶ 38, 39, 41.) Regarding the loans, the Plaintiff alleges that there was an oral agreement that the loans would be repaid upon the sale of The Danforth Inn; that is Defendant Ward allegedly agreed to repay these monies out of the proceeds of that sale, if and when that occurred.[3] (Def. SMF ¶¶ 1, 2; Pl. Add'l SMF ¶¶ 41, 45.)

---

[2] Although the Defendant cites to a page of Thomsen's deposition testimony that is not included in the summary judgment record to support this statement of material fact, the Plaintiff does not deny or qualify the fact that Ward is 100% owner of the Winter Danforth Corporation. (Pl. Reply SMF ¶ 19.) No other statement of fact suggests this ownership so the court assumes this fact as stipulated.

[3] There is dispute about when Ward began to seriously consider selling the property. The Plaintiff states that it was in 2001 and the Defendant states that it was not until 2004. (Pl. Add'l SMF ¶ 29; Def. Reply SMF ¶ 29.) There is also dispute about what actions Ward took in preparation for selling the Inn. (Pl. Add'l SMF ¶ 31; Def. Reply SMF ¶ 31.)

There is a dispute as to whether there was a written contract governing the relationship for the construction services.[4] The construction work was completed by the summer of 2004. (Pl. Add'l SMF ¶ 48.) Thomsen alleges that the Winter Danforth Corporation owed $80,269.67 at year-end 2004 for the construction services and that this money was owed to him and his company, Woodward Thomsen. (Pl. Add'l SMF ¶ 57.)[5]

Ward acknowledges that Thomsen gave her money for the benefit of the business and that she regarded those monies as loans. (Pl. Add'l SMF ¶¶ 52, 55.) These loan advances equal $182,900.[6] (Pl. Add'l SMF ¶ 62.) No regular schedule for repayment was agreed upon and Ward has not paid for any of the construction services rendered or repaid the loans made. (Pl. Add'l SMF ¶¶ 46, 54.)

Thomsen alleges that all the agreements were made between him and Ward individually. (Pl. Add'l SMF ¶¶ 42-43, 59.)[7] His company, Woodward Thomsen, held as an account receivable the debt owed for construction services performed in 2003 and 2004. (Def. Reply SMF ¶ 58.) That receivable was later

---

[4] The Defendant claims that there was a written contract for the construction services. (Def. SMF ¶ 15.) Plaintiff qualifies this statement of fact. He states that there was a written contract governing previously performed construction services that has been fully paid but that the services for which the Plaintiff seeks payment in this action are not governed by a written contract. (Pl. Reply. SMF ¶ 15.) No written contract was submitted with the motion.

[5] The Defendant denies this statement of material fact but apparently only objects to the suggestion that Thomsen is owed individually.

[6] The Plaintiff now also alleges an additional five loans, totaling $36,000, were made and that he only recently discovered the documentation for these loans. (Pl. Add'l SMF ¶ 66.) He frequently mentions these loans but he has not filed a motion to amend his Complaint to include them in this action.

[7] The Defendant denies these statements. (Def. Reply SMF ¶¶ 42-43.) Her denials establish that she knew that she had a relationship with Thomsen's corporate entity but not that she did not also believe that she had an agreement with Thomsen personally. Her denial as to Thomsen's understanding merely suggests that he might have understood that Winter Danforth Corporation to also have some obligation. It does not controvert Thomsen's allegation that he believed the agreements were with Ward personally.

6

transferred to Thomsen individually. (*Id.*) The Winter Danforth Corporation carried this amount on its tax returns as a note payable to Woodward Thomsen. (Pl. Add'l SMF ¶ 51.)[8]

Barbara married Ronald Ward on October 28, 2005. (Pl. Add'l SMF ¶ 57.) In the fall of 2006 Winter Danforth Corporation merged with The Danforth LLC and thereafter the Inn was an asset held by The Danforth LLC.[9] (Pl. Add'l SMF ¶ 68; Def. Reply SMF ¶ 68.) Thomsen was not informed of this change. (Pl. Add'l SMF ¶ 69.)[10] At that time the fair market value of the Inn was $1,556,700. (Pl. Add'l SMF ¶ 70.)

In 2009, Ward closed on the sale of the Danforth Inn, selling the Inn for $1,825,000 to Kim Swan. (Pl. Add'l SMF ¶¶71, 74.) Thomsen was not told of the closing date until after the sale closed. (Pl. Add'l SMF ¶¶ 72-73.) In selling the Inn, Ward received $143,264 in cash and a condominium valued at $850,000. (Pl. Add'l SMF ¶¶ 81-82.) This condominium was later sold in January 2011 for $630,000, netting $345,124.48 after payment of mortgage debt. (Pl. Add'l SMF ¶ 84.) Ward also sold a property that she owned on Gray Street in December 2010. (Pl. Add'l SMF ¶ 89.) Ward refused to meet with Thomsen regarding payment from the sale of these properties until after the closing on the Gray Street property because she wanted to prevent Thomsen from getting an attachment. (Pl. Add'l SMF ¶¶ 87-88.) The closing statements from the sale of each of these properties reveal that Ward and her husband received $143,264 in cash from the

[8] The Defendant's denial only states that she did not tell David Hoisington anything about this. She does not deny that the note was included on Winter Danforth's tax return.
[9] The Danforth LLC was owned by both Barbara and Ronald Ward, each having 50% of the shares. No Statement of Material Fact states this but it is in the parties' arguments. (Pl. Reply Mem. 9.)
[10] The Plaintiff characterizes this change in corporate form as a transfer of the asset from one business entity to another. The statement of material fact is denied on the basis of using the term "transfer."

7

sale of the Danforth Inn, $74,665 in cash from the sale of the Gray Street property, and $595,124.48 from the sale of the condominium received as partial payment for the Danforth Inn. (Pl. Add'l SMF ¶ 101.) Ward has not paid any money to Thomsen from the sale of these properties. (Pl. Add'l SMF ¶ 100.) Ward denies that she owes Thomsen any payment on the loans made. (Def. Reply SMF ¶ 74.)

Standard of Review

Summary judgment should be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. M.R. Civ. P. 56(c). An issue of "fact exists when there is sufficient evidence to require a fact-finder to choose between competing versions of the truth at trial." *Inkell v. Livingston*, 2005 ME 42, ¶ 4, 869 A.2d 745 (quoting *Lever v. Acadia Hosp. Corp.*, 2004 ME 35, ¶ 2, 845 A.2d 1178).

In considering a motion for summary judgment, the court should consider the facts in the light most favorable to the non-moving party, and the court is required to consider only the portions of the record referred to and the material facts set forth in the parties' Rule 56(h) statements. *E.g., Johnson v. McNeil*, 2002 ME 99, ¶ 8, 800 A.2d 702, 704. Rule 56(h) requires a party that is opposing a motion for summary judgment to support any qualifications or denials of the moving party's statement of material facts with record citations. *Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 6 n.5, 770 A.2d 653. "All facts not properly controverted in accordance with this rule are deemed admitted." *Rogers v. Jackson*, 2002 ME 140 ¶ 7, 840 A.2d 379 (*citing* M.R. Civ. P. 56(h)(4)).

<u>Defendant's Motion for Summary Judgment</u>

Defendant Ward brings this motion on the grounds that the loan claims (Counts V and VI) are barred by the statute of limitation because, all but two of the loans, were made more than six years before the Complaint was brought and are barred by the statute of frauds because there was no writing and the alleged agreement was a contract conveying an interest in land and was not to be performed within one year. She also argues that the work claims (Counts II, III, and IV) are barred by the statute of limitations because all of the work was completed by December 31, 2004, more than six years before the Complaint was filed, and by the statute of frauds because the Plaintiff is attempting to hold Ward responsible for the debts of her corporation. Lastly, she argues that the work claims are barred because Ward cannot be held liable for the debts of a corporation, even if she was the sole shareholder.

A.    *Statute of Limitations*

Common law contract claims and equitable claims must be brought within six years of the accrual of the cause of action, unless otherwise specified. 14 M.R.S. § 752 (2011). A cause of action generally accrues when a party suffers a judicially recognized injury. *Dunelawn v. Gentrau*, 2000 ME 94, ¶ 11, 750 A.2d 591. In the case of breach of contract, the cause of action accrues when there is a breach. *Id.* The terms of the contract will dictate when this occurs.

In certain circumstances, the statute of limitations begins to run when the contract is formed. When the parties to a loan or promissory note do not specify a specific time for repayment, the loan is payable on demand. *Doughty v. Sullivan*, 661 A.2s 1112, 1123 (Me. 1995); 11 AM. JUR. 2D *Bills and Notes* § 87. The statute of limitations for repayment of a demand note begins to run from the

9

time of making because the amount owed is due instantly. *Barron v. Boynton*, 15 A.2d 191, 192 (Me. 1940).

In other circumstances the statute of limitations is extended. Section 852 of Title 14 of the Maine Revised Statutes states,

> In contract actions to recover the balance due, where there have been mutual dealings between the parties, the items of which are unsettled, whether kept or proved by one party or both, the cause of action shall be deemed to accrue at the time of the last item proved in such account.

*Id.* Very limited Maine case law on point exists but this exception also exists in many other states. A relationship between parties is not a "mutual and open account" simply by virtue of the fact that the parties maintained a continuous business relationship. Rather, the hallmarks of a "mutual and open account" are an express or implied agreement between the parties that obligations on each side can be and are to be set-off against each other. *Howland v. Stowe*, 290 Mass. 142, 148 (1935). This requires obligations on both sides. For example, where one party has an account for goods sold and delivered to another and the other party merely makes payments that go to reduce the amount of the account, but no debt is owed from the first party, there is no mutuality of account. *Parker v. Schwartz*, 136 Mass. 30, 31 (1883).

This comports with the only Maine case on point, *Pierce v. Pierce Marine Services*, 1983 Me. Super. LEXIS 46 (Mar. 21, 1983). In that case, an employee of a business was paid partly by commission. His commissions remained on account with the corporation until he demanded payment. He also was authorized to have the corporation pay his debts, such as his mortgage payment. The corporation would cut him a check and debit his commission account. Although

10

an unusual business arrangement, this is a classic mutual and open account where both parties maintained accounts that were agreed to be set-off.

The law also creates an exception to the statute of limitations when there has been fraudulent concealment of the cause of action. 14 M.R.S. § 859. This exception tolls the statute of limitations until the discovery of the cause of action. *Id.*

The Defendant argues that the statute of limitations began to run on the Plaintiff's loan claims at the time the loans were made and that neither of the exceptions to the statute of limitations apply in this case because the parties did not maintain a "mutual" or "open account" and there was no fraudulent concealment. (Def. Mot. 67.)

Based on the definition of "mutual and open accounts" as stated in other jurisdictions and the application under Maine case law, it is clear that the Plaintiff's loans do not fall within this exception to the general statute of limitations.[11] The tolling provision of 14 M.R.S. § 859 is also inapplicable to this case. Even if this court were to find the transaction between Winter Danforth Corporation and The Danforth LLC was a "sale," triggering the Plaintiff's cause of action, the Complaint was filed within six years of that event.[12]

Although neither of these exceptions apply, the fact that the loans were made and the work completed more than six years before the filing of this Complaint is not dispositive. As stated above, the statute begins to run only

---

[11] Interestingly, the Defendant alleges that her obligation to pay the loans is "offset" by monies Thomsen owes to her. (Def. Reply SMF ¶ 74.) Despite this assertion, there is still no evidence of agreement between the parties to use each other's accounts to offset and thus, without such agreement, the exception to the statute of limitations does not apply.
[12] This is not to decide that the 2006 "transfer" constitutes a sale. The court does not reach this issue because the Inn was sold to a third-party in 2009 and both dates are within the statute of limitations for this action.

when a cause of action accrues. Therefore, this defense depends on the terms of the agreement. If there is an agreement between the parties that payment on these loans and work was to be made out of the sale of the Inn, the statute of limitations begins running from the breach of the contract: the failure to remit payment to the Plaintiff after the sale of the Danforth Inn. If the loan agreement was *truly* silent with respect to a repayment term, it must be construed as a demand note, thus beginning the running of the statute of limitations at the moment of the transfer of money. In contrast, if the agreement for the construction work were silent, the court may supply a reasonable term. *Fitzgerald v. Hutchins*, 2009 ME 115, ¶ 19, 983 A.2d 382.

Despite admitting that she considered the payments made by Thomsen to be loans and that the Plaintiff had the expectation of receiving payment from the sale of the Inn (Pl Add'l. SMF ¶¶ 45, 55), the Defendant disputes that there was any agreement to make payment from the proceeds of the sale of The Danforth Inn. (Pl. Add'l SMF ¶ 41; Def. Reply ¶ 41.) Because there is no written agreement in the record, there is nothing that the court can interpret as a matter of law. The conflicting testimony of the parties requires a factfinder to determine if the agreements were truly silent or if there is evidence by which the factfinder court infer a repayment term. The parties have presented a genuine issue of material fact that precludes the court from entering judgment in favor of the Defendant on the statute of limitations defense to the Plaintiff's breach of contract claims regarding both the construction work completed and the loans given.

Despite moving for summary judgment on statute of limitations grounds on Counts III, IV and VI, the Defendant has not put forth any arguments as to

12

why these claims are also time barred. Therefore, the court reserves judgment on these issues.

## B. *Statute of Frauds*

The Defendant also moves for summary judgment on the grounds that the Plaintiff's claims are barred for failure to satisfy the Statute of Frauds.[13] The Maine Statute of Frauds states that no action may be maintained, unless the promise or agreement is in writing and signed by the party against whom enforcement is sought, when the action is upon any contract for the sale of land or any interest in or concerning land; upon any agreement that is not to be performed within one year of the making of the agreement; or to charge any person upon the promise to answer for the debt of another. 33 M.R.S. § 51 (2011). The Statute of Frauds is meant to "preclude false allegations of contract." *Wells Fargo Home Mort. v. Spaulding*, 2007 ME 116, ¶ 20, 930 A.2d 1025. The requirement of a writing can be satisfied in almost any form such as receipts, letters, and business books, and may include a series of writings not all of which are signed or are individually sufficient. *Id.* However, "to satisfy the statute, the memorandum must contain within itself, or by some reference to other written evidence…all the essential terms and conditions of the contract, expressed with such reasonable certainty as may be understood from the memorandum and

---

[13] The Defendant does not argue that the Plaintiff's equitable claims of quantum meruit and unjust enrichment are similarly barred for failure to comply with the Statute of Frauds. The authorities hold that, "[b]ecause the theory of unjust enrichment or quasi-contract does not rest on any implicit or express understanding, but arises by operation of law…it is always a restitutionary device." Horton & McGehee *Maine Civil Remedies* § 11.1 at 229 (4th ed. 2004). And further that, "A party who would otherwise have a claim in restitution under a contract is not barred from restitution for the reason that the contract is unenforceable by him because of the Statute of Frauds unless the Statute provides otherwise or its purpose would be frustrated by allowing restitution." RESTATEMENT (SECOND) CONTRACTS § 375 (1981). Because the Statute of Frauds is a contract doctrine it should not bar equitable claims. *See e.g. Flannery v. Lajoie*, 2012 Me. Super. LEXIS 22, * 9-10 (Mar. 7, 2012).

13

other written evidence…without any aid from parol testimony." *Gagne v. Stevens*, 1997 ME 88, ¶ 9, 696 A.2d 411 (*citing Kingsley v. Siebrecht*, 92 Me. 23, 27-28 (1898)).

There are certain defenses to the applicability of the Statute of Frauds. If the party seeking enforcement has fully performed his obligations under the agreement, the other party is precluded from raising the one-year Statute of Frauds defense. *See Paris Utility Dist. v. A.C. Lawrence Leather Co.*, 665 F. Supp. 944, 957 (D. Me. 1987); RESTATEMENT (SECOND) CONTRACTS § 130(2), cmt. d. The doctrine of part performance, based on the doctrine of equitable estoppel, will remove an agreement from the writing requirement if, by clear and convincing evidence, the party seeking enforcement proves "(1) that the parties did enter into a contract; (2) that the party seeking to enforce the contract partially performed the contract; and (3) that the performance was induced by the other party's misrepresentations, which may include acquiescence or silence." *Sullivan v. Porter*, 2004 ME 134, ¶ 11, n.3, 861 A.2d 625. The doctrine of part performance is widely used in the context of a sale of land but it has explicitly been held to be inapplicable in the context of an employment contract. *Stearns v. Emery-Waterhouse Co.*, 596 A.2d 72, 1991 Me. LEXIS 307, * 8 (Me. 1991). Also, the Restatement (Second) of Contracts states that the part performance doctrine does not generally apply to make the one-year provision inapplicable. RESTATEMENT (SECOND) CONTRACTS § 130, cmt. e.

The doctrine of equitable estoppel prevents a party from asserting an otherwise unequivocal right upon showing a misrepresentation or fraud. *Chrysler Credit Corp. v. Bert Cote's L/A Auto Sales*, 1998 ME 53, ¶ 28, 707 A.2d 1311. The allegedly fraudulent representation must be related to present or past

14

circumstances, not a future event. *Id.* While some cases hold that mere reliance on a promise "and the continuing assent of the party against whom enforcement is sought," resulting in an "irretrievable change in position," is sufficient to remove an agreement from the requirements of the Statute of Frauds, those cases are limited to contracts for the transfer of an interest in land. *See Harvey v. Dow*, 2008 ME 192, ¶ 20, n.4, 962 A.2d 322; RESTATEMENT (SECOND) CONTRACTS § 129.

### 1. Contract for Sale of Land

The Defendant argues that the Plaintiff's loan claim is barred by the statute of frauds because it was a contract for the sale of land. This contention is based on the Plaintiff's deposition testimony in which he states that he believed that he acquired an "interest" in the Danforth pursuant to the alleged agreement between the parties. The Defendant analogizes this "interest" as akin to an equitable mortgage. (Def. Mot. 3, 7-8.) The Plaintiff disputes this characterization of his deposition testimony and argues that his use of the term "interest" was not meant to state that he had a legal interest in the property, only that he had an interest in seeing the agreement through so that Ward could sell the property and he could be repaid. (Opp. 15-16; Def. SMF ¶ 3; Opp. SMF ¶ 3.)

If any agreement existed between the Plaintiff and Defendant, it is not akin to an equitable mortgage. A court will label a transaction an "equitable mortgage" when there has been a conveyance of an interest in property and the facts surrounding the transfer indicate that the intent of the parties was that the conveyance was to be a security. *Seaman v. Seaman*, 477 A.2d 734, 736 (Me. 1984). There are no allegations of any conveyance to the Plaintiff in this case. The Plaintiff's reference to acquiring an interest plainly was not a suggestion of a

15

conveyance of any ownership interest.[14] Therefore, because the Plaintiff did not acquire any interest in the Danforth Inn (i.e. the alleged agreement did not create a lien or any obligation that would automatically be paid from the sale, it was simply an agreement as to the source of funding), the loan agreement did not have to satisfy the writing requirement.

### 2.   Not to be Completed within One Year

The Defendant also argues that the action on the loans is barred by the Statute of Frauds because the sale of the Danforth Inn was not expected to occur within one year. (Def. Mot. 8-9.) "Some authorities hold that mere possibility of literal performance within a year removes the bar of the statute." *Longcope v. Lucerne-In-Maine Community Ass'n*, 127 Me. 282, 284 (1928). In Maine, it is the intent of the parties that the contract is not to be performed within a year, whether such intent is expressed in words or otherwise plainly manifested, that governs whether the contract must satisfy the statute of frauds. However, as the Restatement (Second) of Contracts § 130, cmt. d states, "the one-year provision does not apply to a contract which is performed on one side at the time it is made, such as a loan of money, nor to any contract which has been fully performed on one side, whether the performance is completed within a year or not." *See also Paris Utility Dist. V. A.C. Lawrence Leather Co. Inc.*, 665 F. Supp. 944, 957 (D. Me. 1987); *McIntyre v. Nice*, 2001 Me. Super. LEXIS 71, * 12 (May 16, 2001).

---

[14] Within the same deposition answer (Thomsen Dep. 100:6-8), Thomsen stated that he did have an interest in the property but that all the money he lent "went to preserve Barbara's interest in the property." This is the only instance that Thomsen used the term "interest" and there is no other indication that he believed he acquired any legal stake in the property. Furthermore, the Defendant argues, in her Reply Memorandum, that that the Plaintiff could have but did not acquire any security interest in the Danforth, thus admitting that the she understood that no legal interest had passed between the parties. (Def. Reply. 7.)

16

First, the court must determine if this agreement was not to be performed within one year. The alleged agreement in this case does not reveal that it was the intent of the parties that it not be performed within one year and, the sale of the Inn clearly could have been sold within the year. Regardless, the Plaintiff admits that the agreement does fall within this part of the statute of frauds. (Pl. Reply 3.)

Second, the court must determine if the parties' agreement satisfies the requirements of the Statute of Frauds. The Plaintiff points to the nineteen checks written to Ward, endorsed by her, and marked "loan," as sufficient written evidence to support enforceability of the agreement. (Pl. Opp. 15.) Although the checks do establish some of the elements of the agreement, the time for Ward's performance and the repayment terms are not specified anywhere and the checks do not refer to any other writing that contain those terms. Therefore, the only way to determine those terms, which are essential to the agreement, is through parol evidence and, thus, the agreement does not satisfy the requirements of the Statute of Frauds.

Third, because the requirements were not met, the court must determine if any of the exceptions to compliance have been satisfied. The Plaintiff raises the defenses of full performance, partial performance, and estoppel.

The doctrine of part performance is an unsuccessful argument for the Plaintiff. Because there is a genuine dispute of material fact regarding an essential term of the contract, Plaintiff has not met the first element of the test. Furthermore, it is unclear whether the part performance exception is applicable to loan contracts and is not generally an exception to the "one year provision."

17

The Plaintiff also raises equitable estoppel as a defense but does not specifically address what elements of the Defendant's actions are fraudulent or tantamount to fraud. He relies on his "irretrievable change in position" as the reason to avoid the Statute of Frauds. However, as explained above, the detrimental reliance argument is limited to agreements for the transfer of an interest in land. The only misrepresentation and concealment that the Plaintiff points to are the Defendant's promise to pay, her dilution of ownership interest in the asset, and her representations regarding the proceeds from the various sales. These acts were not present, existing facts at the time the agreement was made and, thus, this exception is inapplicable.

However, it appears that the Plaintiff has fully performed his obligations because he completed all of the construction services and the remaining claims are based on loans, thus, making the Statute of Frauds defense unavailable to the Defendant. The Defendant has not asserted any fact to contradict full performance. Even if each loan is considered to be a part of a larger loan agreement rather than discrete transactions, there is no allegation that the Plaintiff did not complete his performance as promised.

### 3. Debt of Another

The Defendant also argues that the Statute of Frauds bars the work claims because Woodward Thomsen completed the work for Winter Danforth Corporation and not Barbara Wood personally. Therefore, if the Plaintiff is seeking satisfaction of Winter Danforth Corporation's debt from Barbara Ward, the Statute of Frauds requires a writing, signed by the Defendant agreeing to answer for the debts of another. 33 M.R.S. § 51(2).

18

The Plaintiff has sued the Defendant personally, instead of the corporation, because he believed that he was doing business with her and not the corporation. He does not allege that Ward agreed to answer for the debt of the Winter Danforth Corporation. This section of the statue is inapplicable to this action.

### 4. Conclusion

The Defendant's motion on the affirmative defense of Statute of Frauds is unsuccessful. No part of this action is a sale of land or a guarantee of the debt of another. While the Plaintiff concedes that the agreement falls within the requirements of the statute because it was not meant to be completed within one year, his obligation for lending money to Ward and completing construction work[15] have been fully performed, thus excusing the writing requirement.

### C. *Personal Liability of Ward for Work Done*

The Defendant asserts that the Plaintiff has no right to collect any money against Barbara Ward personally because any agreement was made by the Winter Danforth Corporation and that, even though she is a 100 percent shareholder of the corporation, a shareholder has no individual liability for corporate debt. (Def. Mot. 9.) The Plaintiff's opposition claims that the "uncontroverted evidence" is that the Plaintiff and Defendant were dealing with each other personally rather than with each other in corporate form. (Opp. 17; Def. SMF ¶¶ 18, 19; Pl. Add'l SMF ¶¶ 38-44.)

The identity of the parties to an oral agreement is a question of fact. In the statements of material facts cited above, the Plaintiff cites to various parts of the

---

[15] The Defendant does not argue that the Statute of Frauds barred the construction services claim for this reason, presumably because she alleged that there was a written contract governing the agreement for those services. Because there is a dispute regarding whether there is a written agreement governing these claims, the court considered this argument.

19

deposition testimony and the Defendant counters with different citations. Although there is some indicia that both parties' corporations were involved (i.e. entries of account's receivable and payable) the facts presented and the record support are insufficient to support the conclusion that Ward did not personally obligate herself. The facts as presented would require the court to choose between competing versions of the truth. Thus, the Plaintiff is not entitled to judgment.

### Plaintiff's Cross Motion for Summary Judgment

With his opposition to the Defendant's motion, the Plaintiff also cross-moved for summary judgment on Counts II-VI of the Complaint. As noted in the above section, there are genuine issues of material fact regarding the terms of the agreement that cannot be resolved on summary judgment. The Plaintiff's equitable claims are not available unless he has no adequate remedy at law and his legal claim has not been proven at summary judgment.

**The entry is:**

Plaintiff's Motion to Extend Discovery is DENIED. Plaintiff's Motion to Consolidate CUMBCV-11-14 with CUMCV-11-153 is GRANTED. The Defendant's Motion for Summary Judgment and the Plaintiff's Cross Motion for Summary Judgment are DENIED.

An Order also of this date sets new deadlines applicable in this case.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

DATE: June 4, 2012

_____
Joyce A. Wheeler
Justice, Superior Court

20



## STATE OF MAINE
### PORTLAND CONSOLIDATED COURTS

205 NEWBURY STREET
PORTLAND, MAINE 04101

**TO:**

LEE BALS ESQ
MARCUS CLEGG & MISTRETTA
ONE CANAL PLAZA
SUITE 600
PORTLAND ME 04101-4035



## STATE OF MAINE
### PORTLAND CONSOLIDATED COURTS

205 NEWBURY STREET
PORTLAND, MAINE 04101

**TO:**

CLARKE HAMBLEY ESQ
75 PEARL ST
SUITE 214
PORTLAND ME 04101